Argued and submitted December 18, 1995, remanded in part; otherwise affirmed
June 19, 1996

In the Matter of the Marriage of

Jacqueline B. PETERSON,
*Respondent,*

*and*

Thomas D. PETERSON,
*Appellant.*

(94D01681DS; CA A88677)

918 P2d 858

Jeffrey E. Potter argued the cause for appellant. With him on the brief was Lombard, Gardner, Honsowetz, Potter & Budge.

George W. Kelly argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Husband appeals from a judgment of dissolution, challenging the trial court's distribution of property and its award of attorney fees to wife. On *de novo* review, ORS 19.125(3), we modify the judgment.

At the time of trial, wife, age 46, and husband, age 48, had been married for 22 years. They have two minor children. Husband is a physician and owns a sports medicine practice with offices in Eugene and Roseburg. He earns $12,500 per month. Wife teaches and tutors French, earning $823 per month.

Before trial, the parties agreed to a child custody arrangement and a spousal support amount. Based on that agreement, the court granted custody of the couple's children to wife and awarded her spousal support in the amount of $4,000 per month for five years, $2,500 per month for the following five years and $1,000 per month thereafter, indefinitely. The court ordered husband to pay wife $853 per month for child support. In the property division, wife received $182,444 in assets, including the marital residence and rental property, and husband received $190,277 in assets, consisting primarily of his medical practice. The court awarded wife $9,014 for her attorney fees.

Husband's primary contention on appeal is that the trial court "grossly overvalued" his medical practice. The court found the value of the practice to be $153,578, using a formula provided by an appraiser who was jointly hired by the parties. The appraiser testified that the fair market value of the practice could be determined by adding together the value of the accounts receivable, the cash balance, goodwill, equipment and furnishings.[1] Following that approach, the court calculated the value of the accounts receivable to be $65,324, the cash balance to be $30,000 and the furniture and equipment to be $8,115. It adopted the appraiser's opinion that the practice's goodwill value was $50,139. Adding those

---

[1] The appraiser testified that the resulting value should be reduced by any outstanding liabilities; however, there appear to be none in this case.

figures together, the court reached a total value of $153,578 for the medical practice.

Husband does not dispute the court's method of determining the practice's value; however, he contends that the court made three errors in its calculations, causing it to overvalue the practice by more than $84,000.

■ Husband first claims that the court erred when it assigned a goodwill value to his practice. At trial, husband made arguments about valuation generally but did not object to the expert's valuation of the goodwill value at $50,139. We decline to address husband's argument now, because it was not raised below. ORAP 5.45(2).

■ In his second assignment of error, husband contends that the trial court overvalued the cash balance of the medical practice. At issue is $30,000 held in a business account. Husband contends that he draws that amount as income at the end of the fiscal year and that it should not have been designated as an asset of the medical practice for property distribution purposes. At trial, he presented evidence that the cash balance of the practice was $1,905.

The court found that the $30,000 was part of husband's total income of $150,000, but nevertheless proceeded to include it in the value of the practice to fix what it perceived as an inequity in the child support calculation. Because husband's income exceeded the maximum income ($120,000 per year) used in the child support guidelines for determining the presumptive amount of child support, the court arbitrarily added the "extra" income to the value of the practice as a cash asset:

> "Husband indicates that his gross annual income is approximately $150,000, of which $30,000 is cash that is drawn at the end of the year. In theory, the total $150,000 should be used in determining the amount of child support, but OAR 137-50-490(4) limits the court's consideration to $120,000 annually, or $10,000 per month (the court could overcome this presumption pursuant to OAR 137-50-330, but was not provided the appropriate evidence). *Because the court could not consider the additional $30,000 in the child support calculation, it seemed only fair to include it in the value of the business.*" (Emphasis supplied.)

When the parents' combined incomes exceed the cap in the guidelines, the maximum level of child support designated by the guidelines is presumed correct. OAR 137-50-490(4). The court is authorized to award child support in excess of the presumptively correct amount when there is evidence sufficient to warrant rebuttal of the guidelines amount. OAR 137-50-330; *Stringer v. Brandt*, 128 Or App 502, 877 P2d 100, *rev dismissed* 320 Or 109 (1994). Faced with insufficient evidence to justify a larger child support award, the court erred in attempting to compensate for that insufficiency by treating as part of husband's income the cash balance of the medical practice. Based on husband's testimony, we find that the cash balance of the practice at the time of trial was $1,905.

■ Husband contends that the court made its third error when it valued the accounts receivable, because it did not determine the value of the accounts as of the date of trial. Rather, the court used three-month-old account information in its calculations. We agree with husband that the court should have used the more recent account figures that were presented at trial. *See Olinger v. Olinger*, 75 Or App 351, 357, 707 P2d 64, *rev den* 300 Or 367 (1985) ("We value interests at the date of dissolution unless there has been a long period of separation and mutual financial independence."). At the time of trial, the total amount of the accounts receivable was $90,085.28. Applying the standard collection rate of 81 percent for medical accounts, the resulting value of the accounts receivable was $72,969.08.[2]

■ Based on the revised calculations made above, we have determined that the value of husband's medical practice at the time of trial was $133,128, which is $20,450 less than the trial court's calculation.[3] Accordingly, the total value of the assets husband received in the property division is $169,827. Wife received $182,444 in assets. Although we

---

[2] We apply the collection rate in the same manner that the parties' appraiser did.

[3] The breakdown of that total is as follows: intangible value ($50,139) + accounts receivable ($72,969 (rounded)) + cash balance ($1,905) + equipment and furnishings ($8,115) = $133,128.

agree with husband that the trial court erred, that error does not require an adjustment in the property division.

**5.**     The court predicated its award of attorney fees to wife on the fact that husband received a larger portion of the parties' assets. *See Haguewood and Haguewood*, 292 Or 197, 638 P2d 1135 (1981) (property division should reflect spouse's assumption of attorney fee obligation). Now that *wife* has received a greater share of the assets, an award of attorney fees to her is no longer justified.[4] With that adjustment, the parties leave the marriage in approximately equal positions; therefore, no further modification is required to effect a just and proper division of the parties' assets.

Remanded for entry of modified judgment vacating award of attorney fees to wife; otherwise affirmed. Costs, not including attorney fees, to husband.

---

[1] Because of our disposition, husband's assignments of error challenging the award of attorney fees to wife do not require discussion.