2003 WY 67

**Michael Duane ODEGARD,**
**Appellant (Defendant),**

v.

**Brenda Kay ODEGARD,**
**Appellee (Plaintiff).**

No. 02–138.

Supreme Court of Wyoming.

May 29, 2003.

Peggy Taylor, Gillette, Wyoming, Representing Appellant.

Robert W. Brown of Lonabough and Riggs, Sheridan, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, Michael Duane Odegard (husband), seeks review of the district court's divorce decree, which ended the marriage between him and Appellee, Brenda Kay Odegard (wife). Husband claims that the district court: Erred in the division of the marital property; used inadmissible evidence in valuing property subject to division; failed to

admit evidence pertinent to the property division; erred in awarding attorney's fees to wife; made mathematical errors in computing the property division; erred in requiring husband to pay 7% interest on the unpaid portion of the property settlement; and failed to credit husband in the property division for amounts paid to wife as support pending the finalization of the divorce.

[¶ 2] We will affirm.

## ISSUES

[¶ 3] Husband presents these issues:

A. The district court erred in including in the division, property which was not a product of the marital union and was not acquired during the course of the marriage by the joint efforts of the parties.

1. It was error not to consider the testimony and letter of Theta Lester offered under the exception to hearsay rule.

2. The District Court erred when it failed to follow Wyoming Statute § 20–2–114 by not considering the condition in which the parties will be left and the burdens imposed on the property for the benefit of either party and children.

3. The Court erred in ignoring the parties' stipulation.

4. The District Court erred when it failed to follow Wyoming Statute § 20–2–114 by not considering "the party through whom the property was acquired. . . ."

B. It was error for the District Court to partially consider the inadmissible appraisal of Bob Zabel in setting values on the Home Place.

C. The District Court erred in awarding attorney's fees of $5,000.00.

D. The District Court erred mathematically in making its division.

E. The District Court erred in requiring [husband] to pay seven per cent interest on the property settlement, even though there was no evidence to support it.

F. The District Court erred in not applying the support paid to [wife] against the property settlement.

1. The support provided was more than [wife] needed to defend and carry on the case.

2. The court erred because it failed to consider the tax effects of the distribution.

3. The court erred in failing to consider the ability of [husband] to pay.

4. The court erred because it ignored its own temporary order.

Although wife does not provide a separate statement of the issues in her brief, we glean this as her rendition of the issues:

A. Husband's arguments ignore the standard of review.

B. The trial court may exercise wide discretion in dividing the parties' property and debts.

C. Property given to the parties by third persons is also properly subject to division.

D. The trial court properly refused to receive into evidence Theta Lester's "Disclaimer" letter.

E. The parties did not have a stipulation regarding ownership of or restrictions on the Recluse Place.

F. The trial court did not improperly consider the appraisal of wife's expert, Robert Zabel, in setting values on the Home Place.

G. The trial court did not err in awarding $5,000.00 in attorney's fees to wife.

H. The court did not abuse its discretion in ordering that the cash which husband is to pay to wife over a period of time bear interest at the rate of 7%.

I. The district court did not err in declining to count the temporary support paid to wife during the pendency of this action against the property settlement.

J. The trial court did not err by failing to consider the condition in which the parties will be left when it divided the property.

## FACTS

[¶ 4] The parties were married on November 11, 1978. Throughout the marriage the parties lived on the Odegard family ranch. Husband worked side-by-side with his father on the ranch, doing ranch and farming work, while wife primarily worked in the home raising the children, although she

did do some ranch work and worked part time outside the home on several occasions. Wife initiated the divorce proceedings; however, that was done at husband's insistence and because he did not want to continue the marriage.

[¶ 5] Although a number of issues are raised in this appeal, the focal point is the district court's decision to award wife a ranch property referred to as the "Recluse Place." Husband objects to wife's possession of what he considers Odegard "ancestral" lands, though wife made clear it is her desire and specific intention that the Recluse Place eventually go to the parties' sons when she no longer has need for the income she receives from that property.

[¶ 6] The district court found that the parties had acquired substantial real property during the marriage. They purchased the "Coones Place" in September of 1995, for $805,000.00. The down payment on the Coones Place, as well as the annual payments toward the mortgage on that property, were made with funds received by the parties during the marriage. During the marriage, the parties received several gifts of real property from husband's grandmother, Theta Lester, including a 310–acre tract of land known as the "Jones Place" in 1991, a 4/7 interest in the lands and dwellings constructed on the "Home Place" in 1991 (the Jones Place and the Home Place are known collectively as the "Home Place"), and a large tract of land known as the "Recluse Place" (also known as the "Lester Place") in 1998. The parties built a house on the Home Place using approximately $120,000.00 in funds deposited in an investment account by husband's father. Although that account was in the names of husband and his father, husband's father conceded that those funds were actually wages paid to husband during the course of the marriage.

[¶ 7] Husband received other gifts of land from his grandmother, which were made to him and his father, but did not include wife. Those properties were not included in the property division.

[¶ 8] Wife had a close personal relationship with husband's grandmother, and the district court concluded that all gifts were made in an "intelligent and unequivocal fashion." The properties given as gifts to the parties by the grandmother were included in the property division over husband's objections.

[¶ 9] The district court concluded that the parties owned equity in the Coones Place of $587,192.00, the Recluse Place was worth $515,430.00, and the parties' interest in the Home Place was worth $114,000.00. In accordance with wife's request, but over husband's objection, the district court awarded the Recluse Place to wife and the Coones Place and the Home Place to husband. The district court found that:

> In order to achieve equity in this case, it is necessary to set over to [wife] some of the parties' real property. The "Recluse Place" was not property which historically belonged to the Odegard family. It was, in fact, received by Theta Lester after her marriage to Mayne Lester, a marriage which occurred later in her life. It is physically separated from the rest of the Odegard family lands. It is appropriate that [wife] receive this property as part of her share of the marital estate for the value stated above.

In addition to the Coones Place and the Home Place, husband was awarded all the cattle and ranch equipment. In order to make the property settlement equal, *i.e.*, approximately 50/50, the district court made this adjustment:

> [Husband] should pay to [wife] the sum of $232,898.50 (one-half of $465,797.00) in ten (10) equal, annual installments of $33,159.51, said annual payments including interest at the rate of seven percent (7%), starting on December 1, 2002, and continuing on December 1 of each year thereafter until fully paid. [Husband] may prepay the principal balance due hereunder at any time, without penalty, provided, however, that any such prepayment will be credited first to accrued interest and then to principal.

### STANDARD OF REVIEW

[¶ 10] There are few rules more firmly established in our jurisprudence than

the proposition that the disposition of marital property is committed to the sound discretion of the district court. Judicial discretion is made up of many things, including conclusions reached from objective criteria, as well as exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. We are required to ask ourselves whether the trial court could reasonably conclude as it did and whether or not any facet of its ruling was arbitrary or capricious. In accomplishing our review, we consider only the evidence in favor of the successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record. *Holland v. Holland,* 2001 WY 113, ¶ 8, 35 P.3d 409, ¶ 8 (Wyo.2001). Moreover,

We apply an abuse of discretion standard when reviewing divisions of marital property and, recognizing that property settlements present complex problems requiring the trial court to assess the respective merits and needs of the parties, we will not disturb the result absent a manifest abuse of that discretion. *France v. France,* 902 P.2d 701, 703 (Wyo.1995); *Neuman v. Neuman,* 842 P.2d 575, 578 (Wyo.1992); *Kennedy v. Kennedy,* 456 P.2d 243, 247 (Wyo.1964 [1969]). We will find an abuse of discretion when the disposition shocks the conscience of the court and appears so unfair and inequitable that reasonable persons could not abide it. *France,* 902 P.2d at 703.

*Mann v. Mann,* 979 P.2d 497, 500 (Wyo. 1999).

## DISCUSSION

### Inclusion of Non-marital Property in the Property Division

[¶ 11] Husband contends that some of the property included as marital property was not a product of the marital union and was not acquired during the marriage by the joint efforts of the parties. As set out in the facts above, it was husband's contention that all gifts of real property made to husband and wife by husband's grandmother should not be included in the marital estate. Husband also contended that cattle owned by him at the time he entered into the marriage should be excluded from the property settlement. Wyo. Stat. Ann. § 20–2–114 (LexisNexis 2001) is the primary source of guidance to the district court in this regard:

**§ 20–2–114. Disposition of property to be equitable; factors; alimony generally.**

In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

[¶ 12] As was true in the *Holland* case, here husband's arguments are, for the most part, based upon a view of the record which gives credence only to the evidence favorable to husband, and ignores the evidence favorable to wife. Husband has the burden of demonstrating that the evidence adduced before the district court did not support the property division as a whole. *Holland,* ¶ 9. Wyo. Stat. Ann. § 20–1–201 (LexisNexis 2001) provides that married persons may retain as their separate estate, property that a spouse owns at the time of the marriage (together with its increased value). Property owned jointly by the parties is, as a general rule, considered a part of the marital estate. Indeed, although married persons may retain their separate estates while married, upon the filing of a complaint for divorce, that right is adjusted. As a part of the divorce, the jurisdiction of the district court is invoked to provide for an equitable distribution of the property of the parties and, accordingly, a married person's separate property is subject to distribution by the court, as well as jointly owned proper-

ty. *Metz v. Metz*, 2003 WY 3, ¶ 8, 61 P.3d 383, ¶ 8 (Wyo.2003); *Mann*, 979 P.2d at 499.

[¶ 13] Husband's argument in this regard is based largely upon the case of *France v. France*, 902 P.2d 701 (Wyo.1995). That case is faithful to the standard of review we have set out above, but is distinguishable from the circumstances of the instant case. First, of course, it must be recognized that in *France* we affirmed the trial court's division of the Frances' marital property, finding that it was not an abuse of discretion. Thus, the facts emphasized in our opinion are those that were most favorable to the wife. Secondarily, the property at issue in the *France* case was inherited by wife, from her parents, a few years before the divorce, and the gift of stock from wife to husband was made on the assumption that the marriage would endure; was made almost exclusively to avoid estate taxes associated with the nearly simultaneous death of wife's parents, and wife wished to preserve that inheritance for the benefit of the parties' daughter, who was unable to provide for herself. We held that the property division was "fair, just, and manifested an exercise of discretion that is unassailable." *France*, 902 P.2d at 706. As our further discussion will bear out, the property division fashioned by the district court in the instant case was designed to implement as nearly as possible a 50/50 split, and is also "fair and just, and manifested an exercise of discretion that is unassailable."

**Theta Lester's Letter**

[¶ 14] As set out more fully above, husband's grandmother made gifts of real property to the parties. At trial, husband offered as evidence a letter purportedly written by Theta Lester. The letter is not dated and reads as follows:

> I Theta H. Lester gifted and deeded land to my grandson Michael D. Odegard and his wife Brenda K. Odegard with the intention that it would not be sold or divided. It was also my intention that Brenda would not get any of the land in case of divorce. Her name was added as an estate planning tool to allow for a larger gift.

The district court declined to admit the letter as evidence. It is agreed by both parties that the letter constitutes hearsay evidence and is in the nature of parol evidence. The admission of evidence, including the admission of hearsay, is within the sound discretion of the trial court, and we will not disturb evidentiary rulings unless a clear abuse of discretion is demonstrated. *Young v. HAC, LLC*, 2001 WY 50, ¶ 6, 24 P.3d 1142, ¶ 6 (Wyo.2001).

[¶ 15] Husband contends that the letter was admissible because it met the requirements of W.R.E. 804(b)(6) (also see W.R.E 803(24)):

> **Rule 804. Hearsay exceptions; declarant unavailable.**
>
> . . . .
>
> (b) Hearsay Exceptions.—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (6) Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Although the letter may have had some marginal utility as evidence of a material fact, the deeds signed by Lester were unequivocal and were the most probative evidence on point. Moreover, the letter lacked the requisite circumstantial guarantees of trustworthiness. In addition to the fact that the letter was not dated, husband conceded that he

wrote the body of the letter, and his grandmother signed it. The record bears out the district court's conclusion that Lester knew what she was doing, and the consequences of those gifts and the deeds should be taken at face value, *i.e.*, that the gifts were marital property. *See Snyder v. Lovercheck*, 992 P.2d 1079, 1086 (Wyo.1999) (extrinsic evidence not admissible to contradict plain meaning of terms used). The district court did not err in disallowing the letter as evidence contradicting Theta Lester's gifts.

## Failure to Consider Condition in Which the Parties Will be Left by the Divorce

[¶ 16] Wyo. Stat. Ann. § 20–2–114 requires that the district court consider the condition in which the parties will be left by the divorce. The district court made a specific finding in this regard, noting that husband would continue to have a substantially higher income than wife, who works as a bank employee. In 2000, the parties enjoyed an adjusted gross income of over $300,000.00, most of which will continue to go to husband.

[¶ 17] Husband contends that the Recluse Place is an integral part of the family ranching operation and will work a hardship on him. Perhaps more to the point, because no "hardship" to husband is evident in the record, he contends that, "[i]n one devastating blow, the District Court ended a tradition in the Odegard family ranch being passed down to the boys. Giving [wife] the Recluse place effectively took out 3,735 acres of ranching land out of the family. The ruling may have ruined her son[s'] chances at becoming … rancher[s] as well." As we have noted above, the property division was equitable in all respects, and the district court did not abuse its discretion in fashioning a division that provided some security for wife in the form of the Recluse Place. However, it is significant that husband ignores that wife specifically testified that she intended to pass on the ranch to "the boys," who were her sons too, and the likelihood of them continuing in the ranch business does not appear any less likely with the ranch in wife's hands, than it was when in husband's hands.

## Did the District Court Err in Ignoring the Parties' Stipulation

[¶ 18] Only a brief comment is required with respect to this argument. There was no stipulation. Based upon their testimony at trial, husband contends that he wanted the Recluse Place to go to the parties' sons, and wife wanted the Recluse Place to go to the parties' sons eventually, and, therefore, there was a stipulation which the district court ignored, contrary to the rule which favors such stipulations. Since there was no stipulation, the district court did not abuse its discretion in this regard.

## Did the District Court Fail to Consider the Party Through Whom Property Acquired

[¶ 19] The district court did consider this factor, which derives from Wyo. Stat. Ann. § 20–2–114. This argument is a variation on earlier arguments that wife should not receive any real property gifted to the parties by husband's grandmother. The district court found that both parties received the real property from the grandmother and that grandmother's gift to wife was based on a close personal relationship between the two, thus making the gift both logical and reasonable given all of the relevant circumstances.

[¶ 20] Husband takes this argument one step further, asserting that because husband used his father's equipment for the ranching operation, and because husband's father placed a part of husband's wages in an investment account, which was later used to build a house on the Home Place, wife isn't really entitled to much of anything. In light of our conclusion that this property distribution was equitable and well within the trial court's discretion, we cannot afford any credence to this argument. We discern no abuse of discretion in this regard.

## Was it Error to Consider the Zabel Appraisal

[¶ 21] Both parties obtained appraisals on the real property at issue. Bob Zabel did an appraisal for wife. In appraising some of the real property, Zabel used an unconventional method to assess its value. Because that property produced considerable income from surface damage payments and

CRP payments, he appraised it at a value considerably higher than did husband's appraiser. Because the methodology used by Zabel with respect to that property was unconventional, the district court did not consider it. However, with respect to the Home Place, the district court chose to rely on Zabel's appraisal. Zabel's appraisal was considerably higher than that done by husband's appraiser. This argument is based in part upon the parties' ownership of an undivided 4/7 interest in the Home Place, a circumstance that serves to devalue the property because it makes the property virtually unmarketable. The district court's decision appears to be based upon a realistic view of its value as the parties' home, which was a factor at the core of Zabel's appraisal.

[¶ 22] As noted above, the district court enjoys considerable latitude and broad discretion with respect to the admission or exclusion of evidence. We have reviewed the evidence relating to the appraisals in detail and conclude that the district court did not abuse its discretion in admitting a portion of Zabel's appraisal and utilizing it in valuing the Home Place.

### Did the District Court Err in Awarding Wife Attorney's Fees

[¶ 23] Wife's evidence with respect to attorney's fees was admitted without objection from husband. We have held as follows with respect to this issue:

> The purpose of attorney fees in a divorce case is to assist the party, as necessary, so that the party can carry on or defend the action. *Hendrickson v. Hendrickson*, 583 P.2d 1265, 1268 (Wyo.1978); *Prentice v. Prentice*, 568 P.2d 883, 886 (Wyo.1977). The party seeking to recover attorney's fees bears the burden of demonstrating the reasonableness of the fees and must submit an itemized bill reflecting the time and rate charged. *Pekas v. Thompson*, 903 P.2d 532, 536 (Wyo.1995) (quoting *Hinckley v. Hinckley*, 812 P.2d 907, 915 (Wyo.1991)). Even though Hessel and Black are both independently wealthy, the statute does not require that Hessel establish financial necessity for the award of attorney's fees and costs. *Rocha*, 925 P.2d

at 234. Hessel attached an itemized list of her expenses to her Reply to Defendant's Response and Objection to Plaintiff's Bill of Costs and Attorney's Fees. That document was sufficient to establish reasonableness in light of the expenditures Black made to create his elaborate presentations in this case. Hessel's expenses under the circumstances were reasonable and necessary to a defense against the attack mounted by Black on the Decree of Divorce. We find in this record more than sufficient information to permit the district court reasonably to decide as it did, and nothing indicates that the decision was arbitrary or capricious. In the absence of an abuse of discretion, we affirm the order awarding Hessel attorney fees and costs.

*Black v. DeBlack*, 1 P.3d 1244, 1252–53 (Wyo. 2000); *Russell v. Russell*, 948 P.2d 1351, 1355–56 (Wyo.1997). Under the circumstances of the instant case we find no abuse of discretion in the award of attorney's fees.

### Did the District Court Make Mathematical Errors

[¶ 24] Husband contends that the district court erred in calculating the value of livestock and grain, which cost husband between $4,000.00 (using figures most favorable to wife) and $18,000.00 (using figures most favorable to husband) in the property division process. The district court's math process is not set out in detail in the decree; however, it appears that a mathematical error may have occurred.

[¶ 25] We begin our analysis by noting that there were some delays in finalizing this divorce because the district court's criminal docket was crowded. After the trial was completed, in an effort to expedite the process of finalization, the district court asked the parties to submit proposed decrees and he would then fashion them into a final decree. The decree, as entered, was not submitted to the parties for approval before it was entered. Husband did not attempt to correct the problem he now complains of on appeal by filing a motion for new trial or a motion for relief from the decree. W.R.C.P. 59 and 60. Thus, the trial court has not had

an opportunity to consider its error, if indeed, there is an error.

[¶ 26] It is apparent that the district court rounded various sums up or down in the process of dividing what amounted to a marital estate valued at between $1.5 million and $2 million. Husband concedes that this argument could result in an increase in his share of that settlement of only $4,000.00. Assuming for purposes of discussion that husband's assertion is correct, we conclude that remand to correct the error is unnecessary because the asserted error is de minimus and, thus, is harmless. W.R.C.P. 61; W.R.A.P. 9.04. *And see Butler and Butler*, 160 Or.App. 314, 981 P.2d 389, 395 (1999) (de minimus error in calculating award on property did not affect fairness of overall property division); *Peterson and Peterson*, 141 Or. App. 446, 918 P.2d 858, 860 (1996) ($20,450.00 error does not require adjustment where division ended up being $169,827.00 for husband and $182,444.00 for wife); *In re Marriage of Binsfield*, 269 Mont. 336, 888 P.2d 889, 894 (1995) ($1,424.70 error in division of estate totaling $1.2 million harmless error); *Olivas v. Olivas*, 108 N.M. 814, 780 P.2d 640, 647 (N.M.App.1989) (de minimus errors will not be examined); *In re Marriage of Holden*, 81 S.W.3d 217, 222–23 (Mo.App. S.D.2002) (error of only "several thousand dollars" and less than 1% of estate of about one million dollars, minimal/harmless error); and *Sateren v. Sateren*, 488 N.W.2d 631, 634 (N.D. 1992) ($4,500.00 difference in division of estate of $56,000.00 not de minimus).

### Did the District Court Err in Awarding 7% Interest on Husband's Cash Payment to Wife

[¶ 27] Husband contends that the district court erred in requiring husband to pay 7% interest on the judgment it entered against husband in the amount of $232,898.50, the amount which the district court determined would make the property settlement equitable. Wyo. Stat. Ann. § 1-16–102(a) (LexisNexis 2001) provides that "... all decrees and judgments for the payment of money shall bear interest at ten percent (10%) per year from the date of rendition until paid."

[¶ 28] Husband did not object to the decree or otherwise raise this issue below, nor did wife, and we will not consider it further other than to suggest that the interest rate imposed is set at a level that does not shock the conscience of the court. *See Mayland v. Flitner*, 2001 WY 69, ¶ 48, 28 P.3d 838, ¶ 48 (Wyo.2001). The decree specifically allows husband to prepay this sum of money, without penalty, and thus it appears that husband is not harmed in any way should he wish to prepay the judgment with money borrowed at a more favorable interest rate than 7%.

### Should the District Court Have Included Support Payments as Part of the Property Division

[¶ 29] Husband contends that wife received an excessive amount of money as support during the pendency of the divorce and, therefore, the district court abused its discretion in not crediting that excess payment to the lump sum payment husband must make to wife, in order to make the settlement equitable. The amount at issue was awarded to wife as support pending the divorce and not as a part of the property settlement. The divorce action was pending for almost two years. Although no abuse of discretion is apparent, we will note at this juncture that neither cogent argument nor pertinent authority supports this argument. We have consistently refused to address claims not supported by cogent argument or citation to pertinent authority whether a pro se litigant or counsel files the brief. *Walton v. State ex rel. Wood*, 2002 WY 108, ¶ 11, 50 P.3d 693, ¶ 11 (Wyo.2002).

### Did the District Court Ignore the Tax Consequences of Its Actions

[¶ 30] Husband contends that the district court ignored the tax consequences of the decree in the sense that husband made support payments to wife during the pendency of the divorce and also paid taxes on all income received during that time period. In the decree, the district court gives full credit to husband for all taxes he paid prior to entry of the decree. We perceive no abuse of discretion in this regard.

**Did the District Court Fail to Consider the Ability of Husband to Pay**

 [¶ 31]   Wyo. Stat. Ann. § 20-2-114 provides that the district court may decree alimony to a party out of the estate of the other, "... having regard for the other's ability to pay." The district court did not award alimony in this case, and the argument that this language should apply to the property division is not supported by cogent argument or pertinent authority. For this reason, we decline to address the issue further.

**Did the District Court Ignore Its Own Temporary Order**

[¶ 32]   We are unable to discern from husband's brief the purport of this contention. A review of the record does not indicate that the district court ignored its original support order or, if it did, that it had any significance insofar as the equitable distribution of the marital estate is concerned.

## CONCLUSION

[¶ 33]   We hold that the district court did not abuse its discretion in dividing the marital estate of the parties on an approximately 50/50 basis. When considered as a whole, the property distribution is fair and equitable.