2010 WY 144

**Jan KRUSE, n/k/a Jan Twyford, Appellant (Defendant),**

v.

**James KRUSE, Appellee (Plaintiff).**

**No. S–10–0077.**

Supreme Court of Wyoming.

Nov. 9, 2010.

Representing Appellant: C.M. Aron, Aron & Hennig, LLP, Laramie, Wyoming.

Representing Appellee: Edward A. Buchanan of Sawyer, Warren & Buchanan, Torrington, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1]. This is an appeal from the district court's distribution in a divorce decree of two specific assets. Finding no abuse of discretion, we affirm.

## ISSUES

[¶ 2] 1. Whether property separately reserved to a spouse by prenuptial agreement can be disregarded in considering where the parties will be left by a divorce?

2. Where a prenuptial agreement states that pre-marriage property will be the separate property of each spouse, can the district court disregard the exclusivity of that provision by also treating the pre-marriage portion of marital property as separate property?

## FACTS

[¶ 3] After entering into a prenuptial agreement, the parties married on August 16, 2000. The appellant (Wife) filed for divorce on October 3, 2008. The appellee (Husband) answered and counterclaimed a few weeks later. The district court tried the case on August 17, 2009, issued a decision letter on September 4, 2009, and entered a divorce decree on March 2, 2010.

[¶ 4] The prenuptial agreement is not in the record, and there is no trial transcript, but the parties do not dispute the district court's recitation of the agreement provision that underlies this dispute:

The parties signed an antenuptial agreement which the Court finds to be unambiguous. That agreement specified that each would keep any property owned separately before the marriage free from any claim by the other "in the same manner as if the proposed marriage had never been cele-

brated." (Section One 1.) The agreement further specified that

certain assets may be purchased and acquired by the parties as "marital property" (i.e. property specifically intended to be held by the parties jointly, regardless of contribution). Such property shall be considered as held by the parties jointly, and shall be subject to distribution as such in a dissolution of marriage or death of one of the parties. (Section Four 2.)

[¶ 5] Wife did not in the district court contest the prenuptial agreement or the distribution of assets each party owned before the marriage, nor does she do so now. She contests only the district court's distribution of two particular assets: (1) a brokerage account established after the marriage by Husband in both their names; and (2) a house owned by Husband before the marriage, but deeded to both parties after the marriage. The district court distributed the brokerage account to Husband in its entirety because it had been established with funds inherited by him. The district court divided the value of the house between the parties in a manner that will be discussed more fully below.

## STANDARD OF REVIEW

[¶ 6] We recently re-stated the standard we apply in reviewing a district court's division of the parties' property in a divorce:

A district court's division of property in a divorce is entitled to substantial deference.

Decisions regarding the division of marital property are within the trial court's sound discretion, and we will not disturb them on appeal unless there was an abuse of discretion. *Davis v. Davis,* 980 P.2d 322, 323 (Wyo.1999). An abuse of discretion occurs when the property disposition shocks the conscience of this Court and appears to be so unfair and inequitable that reasonable people cannot abide it. *Id.* We view the evidence in the light most favorable to the prevailing party, affording that party every

reasonable inference which can be drawn from the record. *Id.*

*Zaloudek v. Zaloudek,* 2009 WY 140, ¶ 8, 220 P.3d 498, 501 (Wyo.2009) (quoting *Pittman v. Pittman,* 999 P.2d 638, 640 (Wyo.2000)). For some time, we held that an error of law under the circumstances also constituted an abuse of discretion. *See, e.g., Scherer v. Scherer,* 931 P.2d 251, 254 (Wyo.1997); *Brockway v. Brockway,* 921 P.2d 1104, 1107 (Wyo.1996); and *Lund v. Lund,* 849 P.2d 731, 738 (Wyo.1993). That position was abandoned in *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998), however, because "a court does not enjoy any discretion with respect to an error of law." Instead, we focus upon "the question of reasonableness of the choice made by the trial court." *Id.*

[¶ 7] The appealing party "has the burden of demonstrating that the evidence adduced before the district court did not support the property division as a whole." *Odegard v. Odegard,* 2003 WY 67, ¶ 12, 69 P.3d 917, 921 (Wyo.2003). Where the record does not contain a transcript of the trial, and where the record has not been settled pursuant to W.R.A.P. 3.03, we are left to presume that the evidence supported the district court's findings. *Arnold v. Day,* 2007 WY 86, ¶ 9, 158 P.3d 694, 697 (Wyo.2007); *Seherr-Thoss v. Seherr-Thoss,* 2006 WY 111, ¶ 24, 141 P.3d 705, 716 (Wyo.2006).

## DISCUSSION

*Whether property separately reserved to a spouse by prenuptial agreement can be disregarded in considering where the parties will be left by a divorce?*

[¶ 8] The district court's exercise of discretion in distributing the property of divorcing parties is guided by Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2009), which reads as follows:

In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the proper-

ty for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

[¶ 9] Our interpretation of this statute for application by the district court has been as follows:

"There are no specific guidelines as to how much weight is given to each of the factors;" the "trial court has the discretion to determine what weight should be given each of these individual factors." *Barney v. Barney,* 705 P.2d 342, 346 (Wyo.1985); *Wallop v. Wallop,* 2004 WY 46, ¶ 26, 88 P.3d 1022, 1030 (Wyo.2004). There are "'no hard and fast rules' governing property divisions." *Paul v. Paul,* 616 P.2d 707, 712 (Wyo.1980) (quoting *Young v. Young,* 472 P.2d 784, 785 (Wyo.1970)).

*Stoker v. Stoker,* 2005 WY 39, ¶ 22, 109 P.3d 59, 65 (Wyo.2005).

[¶ 10] As mentioned above, Wife only takes issue in this appeal with the district court's distribution of two assets. *See supra* ¶ 5. The first disputed asset—a $75,000 brokerage account held by the parties under joint ownership—was distributed to Husband "as his inheritance was the sole source of the funds." Distribution of the second disputed asset—a house owned by Husband before the marriage—was a bit more complex. The district court stated its reasoning as follows in its decision letter:

The [Husband] owned the residence in Lusk before the parties married. In 2002 he signed a deed placing ownership of that house in both of the parties, jointly. The [Wife] owned a house in Laramie before the parties married. She sold that house, and kept the proceeds in her own name. At some unknown time [Wife] used $10,672 from those proceeds to pay for remodeling of the Lusk house. Because the [Husband] placed the Lusk house in joint ownership, the Court finds that under the terms of the antenuptial agreement it is

subject to equitable division as marital property.

In 2002 the Niobrara County Assessor placed the fair value of the Lusk house at $36,700. In 2008 that value had increased to $65,606. A real estate broker estimated the value in November, 2008 at ranging from $65,000 to $70,000. The evidence did not establish how much, if any of the increase in value from 2002 until 2008 was the result of appreciation, and how much was attributable to improvements. Although the [Wife] argued that the house is worth more than $65,000 to $70,000 the Court does not find reliable evidence to support a greater value. The [Husband] should receive $36,700 as the value of the house prior to making it a joint asset, and the [Wife] should receive the $10,672 she put into improvements. The other increase in value from 2002 until the time of separation should be split equally between the parties. The Court awards the Lusk house to [Husband], and directs that he pay the [Wife] $19,486 for her interest in the house ($10,672 + $8814).

[¶ 11] We will affirm the district court's holding in regard to the first stated issue, for several reasons. First, the gravamen of Wife's complaint, given her wording of the issue, is that, in considering the statutory factor of how the parties would be left after the divorce, the district court should not have disregarded the parties' pre-marriage property governed by the prenuptial agreement. Without the evidentiary basis that might be provided by a trial transcript, however, this Court is unable to evaluate what effect, if any, the pre-marriage assets may have had upon the district court's distribution of the marital assets. Furthermore, Wife has not cited this Court to any authority establishing whether the district court should, or should not, consider assets governed by a prenuptial agreement when distributing marital assets. Finally, the actual complaint voiced in Wife's appellate brief is a complaint not that the district court failed to consider pre-marriage assets, but a complaint that the district court inappropriately weighed the factors that it did consider.

[¶ 12] Specifically, Wife contends that the district court failed to consider that joint ownership is a burden upon property for the benefit of both parties, and failed to consider the "gift presumption" that arises when property titled in one party's name is transferred into both parties' names. *See Paul v. Paul,* 616 P.2d 707, 712 (Wyo.1980); and *Tyler v. Tyler,* 624 P.2d 784, 785–86 (Wyo. 1981). As noted above, the lack of a transcript leaves this Court with no choice but to assume that the evidence supports the district court's findings in regard to these questions. Beyond that, it is not this Court's role to second-guess the district court where it specifically gave great weight to one statutory factor—the party through whom the property was acquired—in distributing the brokerage account, and as to the house, the district court clearly considered the factor of joint ownership because it gave Wife not only her separate investment, but also half of the house's increase in value during the marriage.

[¶ 13] If we respect the standard of review of the district court's exercise of discretion in the distribution of property in a divorce—that being that we do not reverse unless the distribution shocks the conscience of the court—then this case does not come close to demanding reversal. Most of the parties' assets were controlled by a prenuptial agreement and were not before the district court for distribution. Only two assets were at issue, and there is nothing shocking about the way either asset was distributed. In distributing the brokerage account to Husband, the district court emphasized one statutory factor, and in distributing the value of the house, the district court emphasized another. There is nothing presented to us with which we can find fault.

*Where a prenuptial agreement states that pre-marriage property will be the separate property of each spouse, can the district court disregard the exclusivity of that provision by also treating the pre-marriage portion of marital property as separate property?*

 [¶ 14] We will summarily affirm the district court in regard to this issue

because the allegation made within the statement of the issue is directly contradicted by statements made by the district court in its decision letter. The allegation is that the district court treated the brokerage account and the house as if they were assets governed by the prenuptial agreement. That is not true. As to the brokerage account, the district court found that "the account became 'marital property' under the terms of the antenuptial agreement," and proceeded to distribute the account as part of the divorce. Similarly, the district court found the house to be "subject to equitable division as marital property." The fact that the brokerage account and more than half of the value of the house were distributed to Husband does not equate to treating them as assets governed by the prenuptial agreement.[1]

## CONCLUSION

[¶ 15] We will affirm the property distribution in this divorce because the district court did not abuse its discretion in giving more weight to certain statutory factors than it did to others, and because Wife has not shown the distribution of the two assets at issue to have been such as to shock the conscience of the court or to have been unreasonable under the circumstances.

---

1. The wording of this issue has another flaw. Even "separate property," not covered by a pre- nuptial agreement is subject to distribution in a divorce. *Paul,* 616 P.2d at 713.