No. 26     January 8, 2025     343

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Marriage of

Nathan WINTLE,
aka Nathan Paul Wintle,
*Petitioner-Respondent,*

*v.*

Meghan MARTIN,
aka Meghan Sue Martin,
*Respondent-Appellant.*

Multnomah County Circuit Court
19DR12331; A180495

Francis G. Troy, II, Judge.

Argued and submitted December 13, 2024.

Alyson Sneider argued the cause for appellant. Also on the briefs were Erica Tatoian and Harrang Long P.C.

Robert T. Scherzer argued the cause and filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Nakamoto, Senior Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Mother appeals from a judgment dissolving the parties' 10-year marriage and awarding her custody of the parties' 12-year-old child. She assigns error to the property division and to the trial court's requirement that both parties must approve of the child's travel out of the country. We conclude that the trial court did not err or abuse its discretion in determining a just and proper division of the marital property and did not err in requiring both parties' consent for the child's international travel. We therefore affirm.

The parties both have advanced degrees and considerable student loan debt, with husband owing $82,552, and wife owing $122,025. The trial court found that each party had used student loans to pay household expenses. In the dissolution judgment, the court assigned to each party their respective student loan debt.

Mother and the child are living in the family home, which the trial court found had a value of $519,000, based on the valuation of husband's expert as of the date of trial. Mother made some improvements to the home after the parties separated, spending between $25,000 and $30,000. The house has increased in value since the parties separated, but the trial court found that the increase was due to market factors rather than to mother's improvements.

The parties stipulated that mother would be awarded full custody of the child, with parenting time by father. The parenting plan adopted by the court included the following provision:

"Neither parent may take the child outside the United States without prior approval in writing from the other parent or subsequent court order. Neither party shall unreasonably withhold his/her approval. For purposes of providing approval for travel in writing, a hand-written signature is required."

On appeal, mother assigns error to the travel provision and also raises three assignments of error relating to the property division. We address first her contention relating to the travel provision, which she raises in her third assignment of error. The court explained the decision:

"I have the ability to limit the noncustodial parent in certain ways, so I don't know why I don't have the ability * * * to limit the custodial parent's decision without consulting the other side and then getting their—I guess many people do 'consulting the other side' but they leave it at that. They don't then say you've got to get an agreement. I'm going further. I'm saying there has to be an agreement and that's my decision on that."

Mother contends that the provision gives father "veto" power over her decision to travel abroad with the child, and that such orders "impermissibly infringe on the custodial parent's right and responsibility to make decisions regarding the child." Father responds that the clause

"provides a commonsense approach to the cooperation and involvement the parenting time agreement embraces. It is also entirely consistent with modern day federal and international travel with children."

The development of a parenting plan that is in the best interests of the children is within the trial court's discretion. *See* ORS 107.101(4), (5) (stating policy that courts and parents are granted "the widest discretion" in developing a parenting plan that considers the best interests of the child); *Gilbride v. Smith*, 328 Or App 565, 576, 537 P3d 961 (2023) (citing Oregon's public policy directive to "[g]rant parents and courts the widest discretion in developing a parenting plan[.]"); *Murray and Murray*, 287 Or App 809, 814, 403 P3d 473 (2017) (A trial court's decision on parenting time is a matter of discretion that we review accordingly.); *Sjomeling v. Lasser*, 251 Or App 172, 187, 285 P3d 1116, *rev den*, 353 Or 103 (2012) (reversal of trial court's parenting plan decision is proper "only if a trial court's discretionary determination is not a legally permissible one"). We conclude that the trial court's decision to require the parties' mutual approval for international travel was supported by the record and was well within the range of legally permissible outcomes. *See Olson and Olson*, 218 Or App 1, 16, 178 P3d 272 (2008) ("[A] trial court's * * * award must reflect the exercise of discretion under the correct methodology, and it must lie within the range of legally permissible outcomes."). There was no abuse of discretion.

We move on to the assignments of error relating to the property division. ORS 107.105(1)(f) governs the property division upon dissolution of marriage, and directs the court to divide the parties' real and personal property in a manner that is "just and proper in all the circumstances." In reviewing the property division, we are bound by the trial court's express and implicit factual findings, if they are supported by any evidence in the record, and we review the trial court's legal conclusions for errors of law. *Morton and Morton*, 252 Or App 525, 527, 287 P3d 1227 (2012). We review the trial court's overall "just and proper" division of property for an abuse of discretion. *Kunze and Kunze*, 337 Or 122, 136, 92 P3d 100 (2004).

The parties moved to China so that mother could study for her PhD. Mother paid no tuition, but took out student loans that were used primarily for the family's expenses. In her first assignment of error, mother asserts that the trial court erred in not treating her student loan debt as a marital debt to be divided equally.

As part of determining a just and proper division of the parties' property, "a court may divide the debts that the parties incurred during their marriage." *Shlitter and Shlitter*, 188 Or App 277, 283, 71 P3d 154 (2003) (quoting *McInnis and McInnis*, 62 Or App 524, 527, 661 P2d 942 (1983)). Mother is correct that, as with assets, when a debt is considered to be a marital debt, an equal division is generally a just and proper division. *Morton*, 252 Or App at 241 ("If the debt was incurred to pay family expenses, equal division of the debt is generally appropriate."). There are circumstances, however, that "may require a division of debts that departs from what is generally appropriate." *Id.* Here, the trial court identified such a circumstance:

> "[Mother] did an earnest and skillful job of quantifying what amount of her remaining student loans are joint debt of the marriage for which [father] should be responsible for half. The evidence shows that both parties incurred student debt to pay for family expenses when they were young, poor graduate students with a baby to raise. Additionally, [*mother*] *obtained a PhD which has already begun to reap her rewards in terms of her career opportunities and current as well as potential future income.* Each party should

be assigned the student loan debt in their name without equalization."

(Emphasis added.) The court reasoned, in essence, that it was fair that mother be assigned her own student loan debt incurred in obtaining her PhD, because mother "has already begun to reap her rewards in terms of her career opportunities and current as well as potential future income."

The record supports the court's conclusion. There is evidence that, although the funds had been used for family expenses, the loan allowed the family to travel to China so that mother could advance her PhD studies, for which mother has begun to "reap the rewards" through professional opportunities. The record shows that the loan funds also assisted mother to later develop a nonprofit in which mother applies her advanced degree expertise.

Mother contends that if the funds were used for family expenses, the court *must* treat the debt as a marital debt to be divided equally, and that it is error in the just and proper analysis to consider subsequent circumstances. We reject the contention that the trial court was so bound. When a trial court exercises discretion in making a division of debts that departs from an equal division, we review the court's deviation from an equal division for an abuse of discretion. *Kunze*, 337 Or at 135 ("[T]he court's final inquiry as to the 'just and proper' division concerns the equity of the property division in view of all the circumstances of the parties."). The court identified the circumstances that it concluded required a deviation from an equal division, and the record supports the court's conclusion that it was just and proper for mother to bear her own student loan debt. The trial court did not abuse its discretion in assigning to each party their student loan debt.

In her second assignment of error, mother contends that the trial court erred "in disregarding the parties' stipulations concerning their post-separation personal debts and by double-counting those debts by treating them both as marital debts and personal debts." Generally, stipulations of fact are binding on the parties, absent fraud, duress or other circumstances justifying relieving a party of their burden. *See Morey v. Redifer*, 204 Or 194, 214, 264 P2d 418,

282 P2d 1062 (1955). Additionally, "when the facts are stipulated the court is bound by them, and the case must be decided upon said facts and such other evidence as may be adduced." *Crouch v. Central Labor Council*, 134 Or 612, 616, 293 P 729 (1930). But here there were no stipulations—no binding agreements of the parties entered into in court as to how their debts should be divided.[1] It is true that the parties each *testified* that they would take responsibility for their own post-separation personal debts.[2] But their testimony on that issue did not bind the trial court in determining a just and proper division of marital property, including debts. And, contrary to mother's contention, the trial court's consideration of the parties' post-separation debts in making a just and proper division of marital property was not "double counting." The court could properly consider those separate obligations incurred during the marriage in determining a just and proper division of the marital property.

In her fourth assignment of error, mother contends that the trial court erred in valuing the marital home as of the date of the dissolution trial rather than the date of separation. She asserts that she made improvements to the home after separation to which father did not contribute and that she has rebutted the presumption of equal contribution to those improvements as well as to the increase in the value of the home after the parties separated. But the trial court found that any increase in the value of the home post-separation was due to market factors rather than to any improvements made by mother, and the record supports the trial court's finding. The trial court did not err in treating the appreciation in the value of the marital home after the parties' separation as a marital asset. *See Massee and Massee*, 328 Or 195, 202, 970 P2d 1203 (1999) (appreciation in

---

[1] A "stipulation" is a covenant to which the parties to litigation agree. *See Black's Law Dictionary* 1455 (8th ed 2004), which defines "stipulation" as:

"**1.** A material condition or requirement in an agreement; esp., a factual representation that is incorporated into a contract as a term * * *. **2.** A voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by the attorneys representing adverse parties to the proceeding **<<**the plaintiff and defendant entered into a stipulation on the issue of liability**>**."

[2] We note additionally that the general judgment of dissolution states: "Each party shall pay, indemnify, and hold harmless the other party from any debts or obligations incurred by that party since their separation on July 1, 2019."

the value of a marital asset is a marital asset); *see also* ORS 107.105(1)(f)(C) (stating rebuttable presumption that both parties have equally contributed to the acquisition of property during the marriage); *Stokes and Stokes*, 234 Or App 566, 576, 228 P3d 701 (2010) (proper date for valuation of a marital asset is date of dissolution); *Peterson and Peterson*, 141 Or App 446, 450, 918 P2d 858 (1996) (trial court erred in not using value of asset at date closest to date of dissolution); *Olinger and Olinger*, 75 Or App 351, 357, 707 P2d 64, *rev den*, 300 Or 367 (1985) (stating general rule that, in the absence of a long period of separation with mutual financial independence, property interests are to be valued as of the date of dissolution).

Affirmed.