Argued October 27, affirmed as modified November 16, 1970

# GOODE, *Appellant, v.* GOODE, *Respondent.*

476 P2d 805

*Roy Dwyer*, Eugene, argued the cause for appellant. With him on the brief were Dwyer & Jensen, Eugene.

*Harold V. Johnson,* Eugene, argued the cause for respondent. With him on the brief were Johnson, Johnson & Harrang, Eugene.

Before Schwab, Chief Judge, and Foley, Fort and Branchfield, Judges.

FORT, J.

This is a divorce suit brought by plaintiff husband. Defendant wife filed a cross-complaint. Each charged the other with cruel and inhuman treatment. The court awarded the divorce to the plaintiff and custody of the three-year-old boy to the defendant. Plaintiff appeals the award of custody. There is no cross-appeal.

The court, concerning custody, said:

"The issues concerning custody have been well argued, well analyzed, well presented to the Court. The disposition that should be made of this child is far from clear. I am sure that everyone recognizes that the decision that should be made is that decision which will be best for the child and that however much the Court may have and does have compassion for the parents, the Court cannot be influenced by such compassion. I will take under advisement the matter of the custody of the child * * * ."

The court was faced with more than the usual difficulties found in such cases. The defendant had two other children, a six-year-old boy, the product of her first marriage, and a third child five months old, the product of an extramarital liaison during the

present marriage. The child here in question bears the legal name of defendant's first husband, since the boy was born prior to the marriage of plaintiff and defendant. Both parties, however, acknowledge paternity in the plaintiff. The oldest child is the product of a uniracial marriage. Defendant has his custody. Plaintiff is a member of the Negro race, defendant of the Caucasian race, thus the child here in question is the product of an interracial union. The third child was fathered by a member of the Negro race. At the time of trial the three children lived with the defendant in the home of their maternal grandmother, where they had lived for the past nine months.

At the trial the defendant testified she planned to marry again when she might legally do so. Her prospective husband also testified in confirmation of this. He was then in the Navy stationed on Guam. Both the defendant and he testified that he was not the father of the defendant's third child. He also is a member of the Negro race. Upon his release from service in October 1970, he planned to attend school in Eugene, where defendant resides. At the time of trial, the defendant was not employed. She received a monthly child support payment from her first husband. Her prospective husband also contributed substantially from his pay. She also received some support from the plaintiff.

Concerning the evidence of marital discord the trial court stated that had it not been for ORS 107.035, adopted in 1969, it could not have granted a divorce to either party.

ORS 107.100 (1)(a) states:

"* * * In determining custody the court shall consider the best interests of the child and the past

conduct and demonstrated moral standards of each of the parties. * * *"

The foregoing provision was added to the law by Oregon Laws 1961, ch 540, § 1. Prior to that time the statute provided instead:

"For the future care and custody of the minor children of the marriage, as it may deem just and proper, having due regard to the age and sex of such children, and unless otherwise manifestly improper, giving the preference to the party not at fault."

In addition to his contentions concerning the best interests of the child, appellant urges that the "demonstrated moral standards" of the respondent alone are such that he is entitled to the custody of the child.

In *Tingen v. Tingen*, 251 Or 458, 446 P2d 185 (1968), the Supreme Court said:

"In determining custody we ought to consider the conduct establishing grounds for a divorce only if such conduct was, or would be, directly detrimental to the child. The conduct which would render a parent unfit to have custody must have some relevancy to the parent-child relationship, including having some negative effect on the child's upbringing. * * *" 251 Or at 461.

We assume that the court intended that the foregoing construction placed by it as a limitation on the "conduct" clause of the 1961 Act (ORS 107.100 (1) (a), previously cited) has equal application to the "demonstrated moral standards" clause which immediately follows the former. No basis for applying a different, less limited construction to the "demonstrated moral standards" clause presents itself to us.

■ We hold, therefore, that a party may not be deprived of the custody of a child under that clause

unless, in the language of *Tingen*, "such conduct was, or would be, directly detrimental to the child." Thus we do not find it necessary, in the view we take of this case, to consider either the meaning or the validity of the term "demonstrated moral standards."

We exercise our de novo responsibility to determine the facts and the law in conformity with *Mackey v. Mackey*, 1 Or App 177, 460 P2d 371 (1969); *Burzynski v. Burzynski*, 2 Or App 459, 468 P2d 548 (1970); *Hannan v. Good Samaritan Hospital*, 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970) Sup Ct *review denied* (1971); *Rea v. Rea*, 195 Or 252, 261, 245 P2d 884, 35 ALR2d 612 (1952); and *Bennehoff v. Bennehoff*, 209 Or 224, 225, 304 P2d 1079 (1956). We note that the trial court itself questioned the mother at great length concerning not only her own admitted behavorial inadequacies and past emotional instability, but with particular focus upon their impact on the three-year-old boy.

We note, too, that the court here did not have the advantage of an investigation it had the power on its own motion to order under ORS 107.430. No timely request, however, was made for such a study by either party. It is clear that that statute was enacted to afford a measure of protection to the children of the parties, who, otherwise unrepresented under our adversary system, too often are left the unwitting victims of warring parents. When considered together with the 1969 enactment of ORS 107.035, it may be hoped that its greater utilization in appropriate cases will result.

The vital question here is the impact, both present and projected, upon the normal development of this three-year-old boy of the mother's past conduct,

standards and emotional instability. Though not his father's fault, the child has had but little contact with him. Evidence concerning this of necessity is almost exclusively under the control of the parent having the custody of a small child. A competent social or psychological evaluation of child or parents can be of material aid to the court, and in any given case might well prove decisive.

■■ No useful purpose will be served by a detailed recitation of the life styles of the parties. The issue of ultimate fact—the best interests of the child—here turns in large measure on witness credibility, particularly concerning the effect upon the child of past and probable future parental relations. We are required to and do give weight to the findings of the trial judge on such an issue. *Hannan v. Good Samaritan Hospital,* supra; *Burzynski v. Burzynski,* supra; *Bennehoff v. Bennehoff,* supra; *Rea v. Rea,* supra. Although the question is a close one, we cannot say the court's conclusion to leave the child with the mother was erroneous.

In *Christy v. Christy,* 244 Or 575, 419 P2d 425 (1966), the Supreme Court awarded custody of a child to the father in the following language:

"* * * There is, therefore, adequate evidence to form the basis for an award of custody. It is an unenviable and difficult choice. The stated conclusions concerning the personalities and propensities of the parties disclose obvious imperfections in both parents as proper persons to rear the children. As between the two, we choose the husband. We do not believe, however, that the husband's custody should presently be unsupervised. * * *

"The custody of the children is accordingly awarded to the father under the supervision of the

Multnomah County Juvenile Department. * * *"
244 Or at 581.

We are of the opinion that here, too, the custody of the child should not remain unsupervised at this time. The decree of the trial court accordingly should be modified to award custody of the boy to the respondent under the supervision of the Lane County Juvenile Department, and subject to the further restriction that she may not remove the boy from the state of Oregon without prior approval of the court. Otherwise, the decree is in all respects affirmed, including the visitation rights of the father, without costs to either party. The matter is remanded for entry of a decree in conformity herewith.

Affirmed as modified.