Argued and submitted August 9, 2016, affirmed September 20, 2017

In the Matter of the Marriage of

Laura Diane MURRAY,
*Petitioner-Appellant,*
*and*

Justin Colby MURRAY,
*Respondent-Respondent.*

Marion County Circuit Court
10C33437; A158013

403 P3d 473

Lauren Saucy argued the cause and filed the brief for appellant.

Richard F. Alway argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

**TOOKEY, J.**

In this child custody case, mother appeals a supplemental judgment awarding legal custody of child to father. Mother raises a single assignment of error, arguing that the trial court legally erred in its application of the statutory factors that govern child custody awards under ORS 107.137. We disagree; the court correctly applied the statutory factors under ORS 107.137 and its "best interests" determination was not contrary to the evidence or reason. Accordingly, we affirm.

Neither party requests *de novo* review. "Accordingly, we state the facts consistently with the trial court's express and implied findings, to the extent there is evidence in the record to support them[.]" *Miller and Miller*, 269 Or App 436, 437, 345 P3d 472 (2015). Mother and father have one child together, born in 2009. During their marriage, mother and father lived in the parties' marital home in Stayton, Oregon. Mother and father divorced when child was 18 months old, and mother and child moved in with mother's parents in Stayton. Following the divorce, father moved to Salem and, eventually, to Donald, where he resided at the time of this custody hearing.

Up until the present hearing, mother and father shared joint legal custody, and the most recent parenting plan awarded father parenting time on his days off of work. Father had Mondays and Tuesdays off of work and child stayed with father, father's wife, and child's younger half-sister from 6:30 p.m. on Sunday until 10:00 a.m. on Wednesday. Mother is a teacher who has weekends, summers, and other public school breaks off of work. In March 2014, mother moved from her parents' home in Stayton to Albany, Oregon, and filed this proceeding to seek the court's assistance in selecting child's school and to modify the parenting plan and custody arrangement to accommodate child starting kindergarten.

At the custody hearing, mother argued that she "should be awarded custody of the parties' 5 year old child * * * and be allowed to register [child] in the [Spanish immersion] school she has chosen near her residence in Albany because she has been [child's] primary caretaker."

Mother continued, stating that "there is no good way to accommodate Father's current 'work weekend' of Mondays and Tuesdays." Mother proposed that "[f]ather should have [child] every other weekend beginning Friday after school and ending Sunday night." Mother also contended that "[i]t does not necessarily make sense" for child to be with father "more of the summer * * * to 'make up' for lost time during the school year," because "[m]other is consistently available" during the summer because of her employment as a teacher.

Father responded, arguing that "[m]other's choice of school would effect a major disruption and change of the parenting plan that has been in place for three years, dramatically alter[ing] the balance of time between father and mother" with child and that father "seeks custody simply because the court cannot order the continuation of joint custody over either party's objection." Father asserted that he should be given custody and the court should adopt his parenting plan because that "allows equal access to the child" in conformity with Oregon's policy regarding parenting to "[a]ssure minor children frequent and continuing contact with parents who have shown the ability to act in the best interests of the child" and to "[e]ncourage such parents to share in the rights and responsibilities of raising their children after the parents have separated or dissolved their marriage." ORS 107.101. Under father's proposed parenting plan, "[d]uring the school year, the child would be with father during the school week, and with mother every weekend with a Monday morning return" and "[t]he inequality of time during the school year would be 'made up' during the summer with an alternating four weeks with mother and one week with father."

The trial court set forth its ruling in a supplemental judgment modifying custody, parenting time, and support. In that judgment, the court stated that it "has applied the evidence to and taken into consideration all the relevant factors set forth in ORS 107.137, as more fully enunciated in the ruling from the bench on July 16, 2014," and, "[b]ased thereon, it is in the best interests and welfare of [child] that legal custody be awarded to [father]." At that July 16 custody hearing, the trial court stated:

"Because of school coming up, I believe there is a substantial change that warrants a different custody arrangement, a lot of it doing with logistics. Now, I understand when [mother's counsel] says it was dad's choice by moving away [from Stayton], but it could have been just as easy for mom to move to Keizer * * *.

"You each have a right to pursue separate lives that will forever be tied together because you mixed DNA and created a beautiful child. It's obvious that she's beautiful, relatively happy. And you're right; I never heard anything about either one of you being a bad parent * * *.

"But I'm still left with the issues, you know. When I consider all the factors, and primary caregiver is a factor that I would give to mom, and willingness and ability of each parent to facilitate, encourage close and continuing relationship, I give a slight edge to dad. But does that mean anything? No. Other than [that] the rest of them are even and I have to find a way to go forward with this.

"Ultimately, it comes down to the best interests of the child, and there are a lot of other factors that go into that. Not to disregard any of them, I've paid attention to everything that's been said, considered, and reviewed the items that have been put before me.

"My issue is that the law does not ask that I effectively cut one parent out of the equation and I can't help the rigidity of either one of your schedules. And to that end, I'm going to award custody to dad[.] * * *

"* * * * *

"* * * And the downside about Mom's position was it effectively cut dad out of the equation * * *[.]

"The sibling relationship is important, and sometimes that's hard to digest, but I suppose you know [child] well enough to know she cares for [her younger half-sister]."

The court made the following findings in its supplemental judgment:

"a) Because of [child] beginning school, there is a substantial change that warrants a different custody arrangement, a lot of it doing with logistics.

"b)   Mother has been [child's] primary caregiver.

"c)   Father has a slight edge over mother in willingness to facilitate and encourage close and continuing relationship with the child.

"d)   The sibling relationship [child] has with her half-sister is important. [Child] cares for [her younger half-sister, father's other child].[1]

"e)   The rest of the applicable custodial factors are 'even' as to both parents, although their priorities are different.

"f)   The court did not hear anything about either party being a bad parent.

"g)   The court cannot change the rigidity of either of the parents' work schedules. Mother's work schedule is just as rigid as father's.

"h)   The court understands that father moved away [from Stayton], but Mother could have just as easily chosen to move to Keizer [instead of Albany] to be closer to Father's new residence.

"i)   The court has some concern about what [child's] day will be like with mother getting dropped off early, day-care, buses, school, daycare again and getting picked up late.

"j)   There are good things to be said about Mother's objective to have [child] learn a second language early. It creates better opportunities. There is nothing wrong with putting a high priority on higher education.

"k)   The biggest issue that becomes problematic is that Mother's proposal effectively cuts Father out of [child's] life.

---

[1] In her brief, mother asserts that "[t]he only articulated statutory factor that the court found to be more favorable to father was a 'slight edge' regarding facilitating the relationship with a non-custodial parent" because, during its oral ruling, the court stated that "the rest of the[] [statutory factors] are even" other than the primary caretaker factor which favored mother. However, later on during its oral ruling, the court found that "[t]he sibling relationship [with child's half-sister] is important," and it decided to incorporate that finding into the supplemental judgment before finding that "[t]he rest of the applicable custodial factors are 'even' as to both parents." Thus, contrary to mother's assertion, the court also found that child's relationship with her half-sister is a factor that weighs in favor of awarding custody to father. *See Dillard and Dillard,* 179 Or App 24, 29, 39 P3d 230, *rev den,* 334 Or 491 (2002) ("[W]ritten orders control over oral judicial statements.").

"l)   The court's decision has nothing to do with Mother's parenting abilities.

"m)   The court's concern is that the law does not ask that the court cut either parent out of the equation.

"n)   The court is attempting to provide quality time with the child to each parent."

The court then awarded mother parenting time during the school year "every weekend, beginning after school each Friday and ending the following Monday morning at the child's school except * * * mother shall have 'extended weekends' with the child as determined by the school calendars * * * if school is not in session [and] * * * the entire Spring Break." During the summer, the court ordered that "child shall spend * * * two weeks with mother, then one week with father * * *."

On appeal, mother argues that "[t]he trial court legally erred in awarding custody to father after finding that mother was the primary caregiver." Mother contends that the court "failed to consider the 'preference' that law requires be given to such a finding and, instead, simply recited it as a factor." Mother also asserts that the court impermissibly considered "lifestyle choices" and "parenting time criteria" in determining custody. Father responds, arguing that "[t]he trial court properly considered statutory factors, * * * [m]other's singular emphasis on 'primary caretaker' is misplaced," and "[t]he trial court did not engage in 'lifestyle' reasoning in its analysis, or misapply statutory provisions."

Under ORS 107.137, "whether the trial court applied the correct legal standard in making the challenged 'best interests' determination presents a question of law that we review for legal error." *Finney-Chokey and Chokey*, 280 Or App 347, 360, 381 P3d 1015 (2016), *rev den*, 361 Or 100 (2017). "[I]f we determine that the trial court applied the correct legal standard, we review the court's 'best interests' determination for abuse of discretion" and will "uphold the trial court's decision unless it exercises its discretion in a manner that is unjustified by, and clearly against, reason and evidence." *Id.* (internal quotation marks and citations omitted).

ORS 107.137 provides, in part:

"(1)   *** [I]n determining custody of a minor child under ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a)   The emotional ties between the child and other family members;

"(b)   The interest of the parties in and attitude toward the child;

"(c)   The desirability of continuing an existing relationship;

"(d)   The abuse of one parent by the other;

"(e)   The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child ***.

"(2)   The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors ***.

"*****

"(4)   In determining custody of a minor child under ORS 107.105 or 107.135, the court shall consider the conduct, marital status, income, social environment or lifestyle of either party only if it is shown that any of these factors are causing or may cause emotional or physical damage to the child."

We reject mother's argument that "[t]he trial court legally erred in awarding custody to father after finding that mother was the primary caregiver." At oral argument, mother contended that, under *Turner and Muller*, 237 Or App 192, 238 P3d 1003 (2010), the primary caregiver preference outweighs a finding that the other parent is more willing to facilitate and encourage a close and continuing relationship between the other parent and the child. In *Turner*,

on *de novo review*, we concluded that the father "appears to be more willing and able to facilitate and encourage [the child's] relationship with mother than mother would be with respect to facilitating a relationship between [the child] and father," and that the mother was the primary caregiver. *Id.* at 203-04. In addition, the custody evaluator, Carr, when asked about the effect of placing the child with the father, stated, "I think that would have serious psychological effects on this child, who's *** very significantly attached to her mother. Her mother was her *** primary psychological parent." *Id.* at 200. We acknowledged the significance of Carr's assessment that a change in custody "'would have serious psychological effects' on [the child], who 'would feel extremely disconnected from her mother' and whose 'sense of safety and well-being would be *** incredibly threatened,'" and concluded that, "[*u*]*nder those circumstances*, the preference for the primary caregiver weighs in favor of mother and, on balance, indicates that it is in [the child's] best interests to remain in mother's custody." *Id.* at 204 (emphasis added). *Turner* has notable differences from this case. First, it was a decision in which we independently reviewed the facts *de novo*. Second, the circumstances differed significantly in this case. Here, the trial court did not find that placing child with father would have any serious psychological effects on child. Moreover, the trial court determined that ORS 107.137(1)(a), child's emotional ties to her half sister, in addition to ORS 107.137(1)(f), the willingness and ability of father to facilitate and encourage a close and continuing relationship between mother and child, favored father.

No single factor, including the "preference for the primary caregiver of the child," ORS 107.137(1)(e), is dispositive. ORS 107.137(2) provides that "[t]he best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors." Under that statutory directive, it would be legal error for the court to find that mother was the primary caregiver of child and to isolate and rely on that factor to the exclusion of the other factors that it found in favor of father. *See Gomez and Gomez*, 261 Or App 636, 637-38, 323 P3d 537 (2014) (the primary

caregiver is afforded a statutory preference, but that factor "is not dispositive").

Mother's argument that the trial court "failed to consider the 'preference' that the law requires be given to such a finding and, instead, simply recited it as a factor," is not well taken. In making this argument, mother focuses on a single statement of the court:

> "When I consider all the factors, and primary caregiver is a factor that I would give to mom, and willingness and ability of each parent to facilitate, encourage close and continuing relationship, I give a slight edge to dad. *But does that mean anything? No.* Other than [that] the rest of them are even and I have to find a way to go forward with this."

(Emphasis added.) Mother reads too much into that statement and fails to consider the context in which it was made and the record as a whole.

In making that statement, the trial court found that the primary-caregiver and ability of each parent to facilitate a relationship factors did not answer the question of what custody arrangement would be in child's best interests. Once the trial court had determined that those two factors did not resolve the issue, it continued to evaluate other criteria. As noted, the trial court also found that "[t]he sibling relationship is important" and that child cares for her half sister. The court incorporated that "additional finding, which [was] stated on the record herein," into the supplemental judgment as a statutory factor that it considered in favor of father.

Moreover, when that statement is viewed in context, it is evident that the trial court had, as it stated in its supplemental judgment, "applied the evidence to, and taken into consideration all the relevant factors set forth in ORS 107.137." The court repeatedly emphasized, "I've considered the factors," and even went as far as stating that "I have a little cheat sheet that I work with all the time, and I've evaluated them all." On this record, we conclude that the trial court did more than simply recite the primary caregiver preference as a factor; it weighed that statutory factor against the other statutory factors that it found in favor of

father to determine what custody arrangement would be in "the best interests and welfare of the child." ORS 107.137.

Mother next argues that, in evaluating other criteria, "[t]he court impermissibly considered inappropriate factors in determining custody." Mother relies on ORS 107.137(4) and *Miller*, 269 Or App 436. ORS 107.137(4) provides:

"In determining custody of a minor child under ORS 107.105 or 107.135, the court shall consider the conduct, marital status, income, social environment or lifestyle of either party only if it is shown that any of these factors are causing or may cause emotional or physical damage to the child."

In *Miller*, in discussing ORS 107.137(4),[2] we stated that "[t]he trial court's decision to grant custody to father was based on mother's choices to move the children 15 miles away from their former home to live with a trusted friend, to continue her college education, and to have a baby with her boyfriend, who did not have a visible means of support or a driver's license." 269 Or App at 443. "[T]he trial court's ruling was based on disapproval of mother's recent choices— particularly becoming pregnant by her boyfriend—and d[id] not reflect an attempt to articulate how those choices might *damage* the children." *Id.* at 444 (emphasis in original). Because of that, we concluded that "it was legally impermissible for the trial court to consider mother's reasons for her move, her financial situation, her personal situation with her boyfriend and pregnancy, and her decision to continue schooling." *Id.*

Additionally, in *Miller*, we concluded that the trial court legally erred in finding ORS 107.137(1)(f) in favor of the father because "the only finding that the court made that remotely relates to that factor was that mother's move and concomitant change in the school that the children attend made it more difficult for father to spend additional time with the children." *Id.* at 445. We noted, however, that "that

---

[2] ORS 107.137 was amended by Oregon Laws 2013, chapter 72, section 1, to add another subsection, which resulted in renumbering subsections in the statute. Prior to that amendment, ORS 107.137(4) was codified at ORS 107.137(3) (2011). All of the references in *Miller* are to the 2011 version of the statute. 269 Or App at 437 n 2.

is a circumstance that is true for every noncustodial parent where the father and mother do not live in close proximity, and it is not a circumstance, in and of itself, that bears on whether the custodial parent is willing and able to foster a positive relationship with the noncustodial parent." *Id.* at 446. Because the "entire backbone" of the trial court's ultimate conclusion rested on those impermissible considerations, we reversed for legal error. *Id.* at 445-46.

In this case, the trial court was careful not to fault either parent for the parent's choice of employment or place of residence. It stated that both mother and father "have a right to pursue separate lives." Specifically, the trial court found:

> "a)    Because of [child] beginning school, there is a substantial change that warrants a different custody arrangement, a lot of it doing with logistics.
>
> "* * * * *
>
> "g)    The court cannot change the rigidity of either parents' work schedules. Mother's work schedule is just as rigid as father's.
>
> "h)    The court understands that father moved away [from Stayton], but Mother could have just as easily chosen to move to Keizer [instead of Albany] to be closer to Father's new residence."

The court was not interested, as both parties seemed to be, in assessing blame for either of those choices. The court simply recognized that it had to consider the work schedules of both parents and the distance between their residences created by their respective moves to come to a determination of what was in the best interests of child. The court did not impermissibly hold lifestyle choices against either party like the court in *Miller* did and, as discussed below, it could consider both parents' work schedules and the distance between their homes in recognizing "the value of close contact with both parents." ORS 107.105(1)(a).

Mother next argues that "the court impermissibly balanced 'parenting time criteria' under ORS 107.105 (1)(b)" in making its custody determination because "Oregon law sets forth the time at which the factor of 'quality time'

should enter into the court's analysis, and it is in the creation of a parenting plan rather than in the determination of custody." We disagree; the broader context of the statutory provisions demonstrates that, often times, there is a substantial amount of interplay between custody determinations and parenting plans.

ORS 107.105(1)(a) provides that, when the court renders a judgment of marital dissolution, the court may provide:

> "For the future care and custody, by one party or jointly, of all minor children of the parties born, adopted or conceived during the marriage and for minor children born to the parties prior to the marriage, as the court may deem just and proper under ORS 107.137. The court *may* hold a hearing to decide the custody issue prior to any other issues. *When appropriate, the court shall recognize the value of close contact with both parents and encourage joint parental custody and joint responsibility for the welfare of the children.*"

(Emphases added.) In making a custody determination, or a modification of a prior custody determination, the court considers the factors listed in ORS 107.137. However, ORS 107.137(2) provides that the court can consider *"any other relevant factor"* not listed in subsection (1) so long as it does not isolate and rely on it to the exclusion of other factors. (Emphasis added.) Such "other relevant factor" can include the parenting plan the parties were required to submit to the court in this case because mother sought to modify a judgment providing for parenting time with child. *See* ORS 107.102(1) (requiring parties to submit a parenting plan to "modify a judgment providing for parenting time with a child"). Nothing in ORS 107.105(1)(a) or (b), or ORS 107.137, prohibits a trial court from considering the interplay between a proposed parenting plan and a custody determination in modifying its judgment.

The trial court's consideration of the parties' parenting plans and its efforts to foster strong contacts with father and mother was permissible. As noted, ORS 107.105(1)(a) provides that, "[w]hen appropriate, the court shall recognize the value of close contact with both parents" in making a custody determination. Moreover, ORS 107.105(1)(b)

provides that "[t]he court shall recognize the value of close contact with both parents" when reviewing a parenting plan that "has been developed as required by ORS 107.102." Those provisions are consistent with "our stated goal to promote a strong relationship between children and their noncustodial parents by the creation of parenting plans." *McArthur and Paradis*, 201 Or App 530, 536, 120 P3d 904, *rev den*, 339 Or 609 (2005) (citation and internal quotation marks omitted). Furthermore, ORS 107.101(1) provides that it is the policy of this state to "[a]ssure minor children frequent and continuing contact with parents who have shown the ability to act in the best interests of the child."

Under the circumstances of this case, where "[t]he court did not hear anything about either party being a bad parent," it was appropriate for the trial court to evaluate how its custody determination and the associated parenting plan would affect child's ability to have "close contact with both parents." ORS 107.105(1)(a), (b). In light of the foregoing discussion, we conclude that the trial court applied the correct legal standard in making its custody determination under ORS 107.137.

As noted, when the trial court applies the correct legal standard, we will "uphold the trial court's decision unless it exercises its discretion in a manner that is unjustified by, and clearly against, reason and evidence." *Finney-Chokey*, 280 Or App at 360 (internal quotation marks and citations omitted). Although the court found that the primary caregiver factor weighed in mother's favor, the court also found that two other enumerated factors favored father—the emotional ties between child and her half-sister, and father's willingness to facilitate and encourage a close and continuing relationship between mother and child. Moreover, the trial court was concerned that if it awarded custody to mother and accepted her parenting plan that it would "effectively cut[] Father out of [child's] life." In sum, we conclude that the trial court did not abuse its discretion because the trial court's "best interests" determination was "not contrary to the evidence or reason." *Id.* at 363.

Affirmed.