Argued and submitted September 15, 2022, reversed and remanded
October 11, 2023

Nicole Marie GILBRIDE,
*Petitioner-Respondent,*

*v.*

Christopher M. SMITH,
*Respondent-Appellant.*

Union County Circuit Court
19DR01813; A175822

537 P3d 961

In this child custody dispute, father appeals from a supplemental judgment awarding mother sole legal custody of child in the context of his motion to modify a previous custody judgment. Father argues, first, that the trial court abused its discretion in denying his motion to appoint a custody evaluator and, second, that it legally erred in its application of ORS 107.137(1) in determining that it was in the child's best interest for mother to have legal custody. Mother does not appear on appeal. *Held*: Under the circumstances of this case, the trial court abused its discretion in denying father's motion to appoint a custody evaluator and that error was not harmless. Because it is likely to arise on remand, the Court of Appeals also addressed father's contention that the trial court applied an incorrect legal standard in its custody determination and concluded that the court applied the correct standard.

Reversed and remanded.

Thomas B. Powers, Judge.

Daniel S. Margolin argued the cause for appellant. Also on the brief was Margolin Family Law.

No appearance for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Reversed and remanded.

**ORTEGA, P. J.**

In this child custody dispute, father appeals from a supplemental judgment awarding mother sole legal custody of child in the context of his motion to modify a previous custody judgment. Father argues, first, that the trial court abused its discretion in denying his motion to appoint a custody evaluator and, second, that it legally erred in its application of ORS 107.137(1) in determining that it was in the child's best interest for mother to have legal custody. Mother does not appear on appeal. We conclude that, under the circumstances of this case, the trial court abused its discretion in denying father's motion to appoint a custody evaluator and that the error was not harmless. Because it is likely to arise on remand, we also address father's contention that the trial court applied an incorrect legal standard in its custody determination and conclude that the court applied the correct standard. Accordingly, we reverse and remand for a new trial on father's motion to modify the judgment.

BACKGROUND AND PROCEDURAL FACTS

We state the facts relevant to our disposition, beginning with the facts that were before the court at the time it ruled on father's motion to appoint a custody evaluator, deferring to the court's implicit and explicit factual findings that are supported by evidence in the record.[1] *Stancliff and Stancliff*, 320 Or App 369, 370, 513 P3d 20 (2022); *see also State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012) (evaluating "a claim of pretrial error on the basis of the same record that the trial court relied on in making the challenged ruling").

Father and mother met in Pennsylvania and were involved in a brief relationship that mother abruptly ended. A short time later, mother informed father that she was pregnant, and A was born in Idaho in January 2015. After child turned three, an Idaho court entered a judgment in

---

[1] Father requests that we exercise our discretion to review the trial court's custody determination *de novo*. ORS 19.415(3)(b); ORAP 5.40(8)(c). We decline to do so because the trial court made express factual findings, including demeanor-based credibility findings, and father does not identify any factual error in the trial court's custody determination, but rather argues only that the trial court legally erred in applying ORS 107.137 in that determination. ORAP 5.40(8)(d).

July 2018 awarding father and mother joint legal and physical custody of A. The Idaho custody judgment provided, among other things, that mother, who lives in Oregon, was to have primary physical and residential custody of A at all times when A is not in father's care; that father, who still resides in Pennsylvania, was to have monthly and summer visitation and provide notice to mother of the specific visit dates; and that father was to have daily uninterrupted video calls with A during certain hours.

In January of the following year, father registered the Idaho custody judgment in Oregon and, the following month, moved pursuant to ORS 107.434 to enforce parenting time ordered in that judgment. In an affidavit in support of his motion, father averred that mother had violated the parenting time order in multiple ways, including by regularly refusing to agree on dates for monthly and summer visits despite father providing proper notice, threatening to disallow or be unavailable for visitation, ignoring requests for daily video calls and actively monitoring and interfering with those calls, and refusing to provide A's medical and educational records to father.

After a hearing on the motion in March 2019, in which mother appeared *pro se*[2] and father appeared with counsel, the trial court found that mother had violated the custody judgment by improperly denying parenting time and by acting unreasonably in the exercise of parenting time. Specifically, the court found father's testimony credible and that mother had denied father 31 days of parenting time between July 2018 when the Idaho judgment was entered and February 2019. The court entered an order, over mother's objection, which further found that father had been denied uninterrupted video calls with A and that "[m]other is putting up road blocks and is not demonstrating a desire to cooperate with [f]ather or foster parenting time with [f]ather and [A]."

After another hearing in May 2019, the trial court awarded father attorney fees over mother's objection. *See*

___

[2] Mother retained counsel in May 2020, but the trial court granted counsel's motion to withdraw in November 2020. Accordingly, mother appeared *pro se* for all trial court proceedings in this case.

ORS 107.434(2)(d) ("In addition to any other remedy the court may impose to enforce the provisions of a judgment relating to the parenting plan, the court may * * * [a]ward the prevailing party expenses, including * * * attorney fees * * * incurred in enforcing the party's parenting plan."). In doing so, the court found, pursuant to ORS 20.075(1), that mother's conduct giving rise to the litigation, her asserted claims and defenses, and her conduct during the proceedings were objectively unreasonable, even taking into account that she was not represented by counsel.

In January 2020, father moved to modify the custody judgment to award him sole custody of A, alleging that mother "is unable or unwilling to make decisions with [father] in the best interests of [A] and in fact is making decisions that are harmful and detrimental to" A. According to father's declaration in support of his motion to modify the custody judgment, his parenting time had "significantly deteriorated" since the enforcement hearing the previous March, and he feared for A's safety, psychological development, and overall stability and well-being. Father also stated, among other things, that mother had acted in "blatant * * * disregard for the court's authority" by threatening to deny father's summer visitation and to move out of state; that mother continues to deny or substantially interfere with daily video calls and disparages father in front of and through A during calls; that mother threatens father with criminal charges when he attempts to communicate with her about A and threatened to make sure that A "hates" him unless he drops the attorney fee award; and that mother falsely accused father's fiancée of sexual abuse.

Later that month, father filed motions pursuant to ORS 107.425 for a psychological evaluation of mother and for appointment of a custody evaluator or, alternatively, to appoint counsel for A. Father's proposed order for appointment of a custody and parenting time evaluator specified, among other things, who would conduct the evaluation, the scope of the evaluation, the parties' and child's cooperation in the evaluation, the use of the resulting report, and that father would pay the cost of the report up front subject to reallocation.

According to father's declarations submitted in support of the motions for psychological evaluation of mother and A, during A's summer visit to Pennsylvania in 2019, she frequently exhibited sexually inappropriate behavior and, upon returning to Oregon, a complaint was filed with Oregon Department of Human Services accusing father of sexually abusing A, which was quickly deemed unfounded. Father also stated that mother had exhibited erratic and unpredictable behavior and dishonesty since they first met. A legal assistant who had previously worked with father's attorney submitted a declaration in support of father's motion for a psychological evaluation of mother describing mother's "ridiculous, irrational, and completely separated-from-reality behavior" that she had witnessed while working on the case, including that mother falsely accused father's attorney of identity theft for requesting the Idaho custody judgment from the Canyon County clerk of court, that mother threatened father at the courthouse after the enforcement hearing and repeatedly called and threatened him after they had left, and that mother repeatedly acted in a punitive manner towards father even when it directly impacted A's safety, such as refusing to provide a car seat or A's medications for visits. Finally, father's attorney submitted a declaration in support of father's motion to appoint a custody evaluator stating that this case "involves significant disputes regarding parental fitness, custody, parenting time, and many related issues with respect to the best interests of [A]." Father's attorney acknowledged the DHS investigation of the family but stated that it "did not allow for the depth or breadth to evaluate the parties' relationship with [A], the parents' ability to act in [A's] best interest, the parents' associates, or the parents' home situations, or observation of parental interaction with [A]." Father's attorney further stated that a "qualified professional evaluator can provide all of that information—as well as a thorough evaluation of the statutory custody factors [under ORS 137.107]—to the court" in a "comprehensive custody evaluation," which would be "the most complete and accurate information in making the important decisions that are at issue in this case." Father's attorney proposed a "qualified and respected" evaluator who had conducted over 140 such

reports in 15 Oregon counties and affirmed that father was willing to initially cover the cost of the evaluation subject to reallocation.

In February 2020, mother filed a *pro se* objection to the motion to modify the custody judgment. She agreed that the current parenting plan was "not working," but blamed father for violating the custody judgment and enforcement order by, among other things, not informing mother when A visited the emergency room, not communicating with mother about summer parenting time, and disparaging mother in front of and through A. Mother also alleged that father lies about mother, that father has control and anger issues, and that his pursuit of custody of A is intended to "bully" mother and alienate A from her established relationships.

The trial court held a hearing on the motions in April 2020. Mother initially opposed father's motion to appoint a custody evaluator "[d]ue to COVID-19." The court suggested accelerating the case despite the Chief Justice Order postponing most cases until June due to the pandemic, and father opposed that suggestion, given the gravity of the allegations and the need to gather all relevant information to present to the court in making its decision regarding A's best interests.

Beginning with the motion for a psychological evaluation of mother, father explained that the motion to change custody placed in controversy mother's mental state and her fitness to have custody of A, in light of mother's erratic behavior as described in the declarations. The court interjected:

> "THE COURT: Which then raises the immediate question of *** why would the court need the services of a psychological evaluation if there would be robust evidence, you know, one side or the other or both, about behaviors and conduct that would provide a factual basis for the court to make decisions? Because what I'm hearing is—if it is all true, why would it take a psychological evaluation that would take quite a bit of time and cost probably a couple of thousand dollars if we can even get it scheduled?
>
> "A lot of these evaluators are not providing services right now, or they are backlogged ***. So why—why would

everybody assume the delay in time and very significant expense if the court could just evaluate testimony and evaluate evidence and make findings of fact based on that?

"What would this evaluation add that would be worth the delay and the expense? And it's really the same question for all three [evaluations].

"* * * * *

"* * * [W]hat it comes down to is that these are typically tools * * * that actually, A, typically, are not used in modification proceedings, number one. Number two, they're entirely discretionary. Number three, the question for the court in its exercise of discretion is why ought—why should the parties assume significant expenses if the same information could not be generated at a hearing absent all that time and money? So let's talk about that generally with these motions.

"* * * * *

"I understand that * * * original motions, dissolution proceedings, modifications, enforcements, contempt proceedings in family—all of those proceedings allow it.

"The reality is, they are uncommon, and it would be extraordinarily rare to have all three of these ordered in one case. So that's why I just want to get to that issue, why—what's the value added."

Father responded that a change in custody from mother to father would be significant given their geographical distance, that a custody evaluation would be in the child's best interest because it would provide the most complete and impartial information about the parents' fitness and circumstances as it relates to and impacts A, and that such information could not be presented in a day-long trial, particularly in light of mother representing herself:

"[Father's attorney:] [B]ecause we have a situation where Father lives in Pennsylvania and Mother lives in Union [County]; so they're, you know, several thousand miles away. So what we're asking for is a change in custody, which would literally take this child from Oregon and have her primary residence be in Pennsylvania.

"So what we're asking for is such a significant change that we want to make sure we have fully established every

possible fact that the Court needs to weigh to make that determination, because we're very serious about that and we know that it's a very serious request.

"*****

"There are a lot of facts that we can bring to bear that the Court can use as a basis to grant the relief that we are requesting. *** But we believe this is to a degree where someone with psychological or medical training will have insight into the situation, and particularly its impact on the child, that would be relevant to the determination of best interest. Those are factors that are, frankly, outside of our training and specifically I believe why the statute allows for someone in a medical or psychological field to opine about these issues beyond just the factual basis.

"*** [W]e want to look at what is the impact on the child, what has happened to the child. We believe that it rises to the level of emotional or psychological abuse and those are things that I think a third party professional is best to opine about.

"And we want to get it away from he-said, she-said, Mother versus Father, because it's not about he-said and she-said. We're talking about issues that are complex, issues that are extremely hard hitting in this case, especially when you're dealing with a four-year-old girl.

"*** And when we're in a hearing—say we're set for eight hours; we can't in eight hours grasp everything that we need to consider. So we would like a psychological evaluation of the child where the person can have hands-on observation and interaction with the child and use their professional training to make opinions about that. The same thing with Mother.

"And since we're kind of dealing with them all together, because I agree they do repeat the same analysis, a custody evaluation, especially with an unrepresented party, I think is important because that person can get in there, interview the parties, observe the parties with the child, look at collateral sources, look at the surroundings of the child, and make a much more informed opinion than what we can do in a number of hours in a courtroom setting."

After father answered the court's logistical questions regarding the evaluations pertaining to scheduling,

costs, release of information, and a protective order, the court asked for mother's response to father's arguments on each of the three motions. Mother responded, "I'm okay with it," and raised concerns only about her medical information being protected and father's proposed evaluator having briefly acted as a mediator in the case.

The trial court granted the motion for a psychological evaluation of mother and denied the motions for a psychological evaluation of A and a custody evaluation:

"THE COURT: I do believe, [counsel], that there are circumstances in this case that likely do raise issues of fact that might be outside—that might require expert testimony outside what we typically would hear from lay witnesses or simple fact witnesses that would be necessary to inform the court's decision on the motion to modify. So I think that there will be some relief here, but I just can't see value added, so to speak, to support ordering all three of these evaluations.

"From what I've heard, *** a lot of it comes through in the declaration and the affidavits that [counsel] submitted with the motions—it sounds like the central issue, if there could be one defining issue in the case, quite frankly, is the mental state or the psychological state of [mother]. And that seems to be a huge issue in this case. It has certainly been an issue when this matter has come to the court before.

"So I do think that there is a basis in fact and a need for additional, particularly expert, fact finding to get issues resolved for the court or presented to the court for resolution as to the psychological state of Mother. I also note that [mother] does not oppose that motion.

"Because there is good cause to grant it, and because it is unopposed, I will grant the motion and order that a psychological evaluation of [mother] be conducted.

"* * * * *

"*** [B]ecause that issue is so central to the case and because I would anticipate that a qualified thorough examination and the appropriate report to the court, shared between the parties, would give the court a robust body of fact and expertise to rely on in making a decision in this case.

"I do not at this point see that there is sufficient good cause that would have me exercise my discretion to grant the other two motions."

After a January 2021 trial on the motion to modify the custody judgment, the trial court ruled that a substantial change in circumstances had occurred since the last judgment—specifically, the quantitative and qualitative degree of mother's interference with father's parenting time—that justified a change in custody, parenting time, and child support. Turning to the best-interest factors under ORS 107.137(1), the trial court explained that this was "an extraordinarily close case" and that it found "a lot of [m]other's behavior very disturbing, very troubling" and "her credibility *** sorely lacking in some key[] areas in this case" such that "it almost, almost led this court finding her to be an unfit parent." However, the court concluded that it was not convinced that it was in A's best interest to relocate to Pennsylvania, given that the expert who evaluated mother had no opinion on mother's overall fitness as a parent and that there was no expert testimony regarding the risk to A of relocating. The court therefore awarded sole legal custody to mother. This appeal followed.

## DISCUSSION

We first address father's assignment of error challenging the trial court's denial of his motion to appoint a custody evaluator. ORS 107.425 provides, in relevant part:

"(1)  In suits or proceedings described in subsection (4) of this section in which there are minor children involved, the court may cause an investigation to be made as to the character, family relations, past conduct, earning ability and financial worth of the parties for the purpose of protecting the children's future interest. The court may defer the entry of a general judgment until the court is satisfied that its judgment in such suit or proceeding will properly protect the welfare of such children. The investigative findings shall be offered as and subject to all rules of evidence. Costs of the investigation may be charged against one or more of the parties or as a cost in the proceedings but shall not be charged against funds appropriated for public defense services.

"(2)   The court, on its own motion or on the motion of a party, may order an independent physical, psychological, psychiatric or mental health examination of a party or the children and may require any party and the children to be interviewed, evaluated and tested by an expert or panel of experts. The court may also authorize the expert or panel of experts to interview other persons and to request other persons to make available to the expert or panel of experts records deemed by the court or the expert or panel of experts to be relevant to the evaluation. The court may order the parties to authorize the disclosure of such records. In the event the parties are unable to stipulate to the selection of an expert or panel of experts to conduct the examination or evaluation, the court shall appoint a qualified expert or panel of experts. The court shall direct one or more of the parties to pay for the examination or evaluation in the absence of an agreement between the parties as to the responsibility for payment but shall not direct that the expenses be charged against funds appropriated for public defense services. If more than one party is directed to pay, the court may determine the amount that each party will pay based on financial ability."

A court has authority to order such independent investigation or examination of a party or the children in specified cases, including when, as here, "[a] motion to modify an existing judgment in a domestic relations suit is before the court." ORS 107.425(4).

The statute's permissive text indicates that the trial court's ruling is a matter of discretion, which we consequently review for abuse of discretion. "Discretionary decisions are those in which a court chooses among several legally correct outcomes." *State v. Mott*, 370 Or 830, 848, 527 P3d 758 (2023). "Accordingly, a first step in analyzing the exercise of discretion is to determine the boundaries that define the range of permissible discretion." *State v. Pilon*, 321 Or App 460, 466, 516 P3d 1181 (2022). The text of ORS 107.425 provides some guidance on how the court should exercise its discretion: the purpose of an investigation is to "protect[] the children's future interest," and the court may take such time as to allow it to be "satisfied that its judgment *** will properly protect the welfare of such children."

That guidance is consistent with the framework of the child custody statutes generally. *Cf. Pilon*, 321 Or App at 466-69 (explaining that a continuance motion made to remedy a discovery violation "operates within the boundaries of discretion afforded by the discovery statutes" and evaluating the trial court's exercise of discretion "within that statutory framework"). The "primary consideration in a child custody proceeding is the best interests of the child." *Dept. of Human Services v. T. G. H.*, 305 Or App 783, 791, 473 P3d 591 (2020) (citing *Greisamer and Greisamer*, 276 Or 397, 401, 555 P2d 28 (1976) (internal quotation marks omitted)); *see also State ex rel Johnson v. Bail*, 325 Or 392, 399, 938 P2d 209 (1997) ("[T]he overriding theme of the child custody statutes is the best interests of the child." (Footnote omitted.)). That objective is reflected in ORS 107.137(1), which provides that, "in determining custody of a minor child under ORS 107.105 or 107.135, the court shall give primary consideration to the best interests and welfare of the child." It is also reflected in the Oregon public policy directive to "[g]rant parents and courts the widest discretion in developing a parenting plan," ORS 107.101(4), and, in doing so, to "[c]onsider the best interests of the child and the safety of the parties," ORS 107.101(5).

The best interests and welfare of the child were not always the primary consideration in determining child custody. Prior to 1961, Oregon law provided that a court had power to decree "[f]or the future care and custody of the minor children of the marriage, as it may deem just and proper, having due regard to the age and sex of such children, and unless otherwise manifestly improper, giving the preference to the party not at fault." *Goode v. Goode*, 4 Or App 34, 37, 476 P2d 805 (1970) (quoting *former* ORS 107.100(1) (1953), *amended by* Or Laws 1961, ch 540, § 1). Under that legal framework, child custody was determined in an adversarial proceeding where the parties vied to establish grounds for and defenses to a divorce decree. *See former* ORS 107.030 (1969), *repealed by* Or Laws 1971, ch 280, § 28 (providing specific "causes" for which the "dissolution of the marriage contract may be declared at the suit or claim of the injured party"); *former* ORS 107.070 (1969), *repealed by* Or Laws 1971, ch 280, § 28 (providing specific bases on which

the defendant in a suit for dissolution of the marriage may admit fault and "show in bar of the suit").

Authorizing a court to order investigations in domestic relations cases was part of ongoing legislative reforms aimed at moving dissolution and child custody determinations away from a purely adversarial model and providing greater representation of the children's interests in such determinations. Indeed, ORS 107.425 was enacted as part of HB 1239 (1971) that, among other reforms, abolished the doctrine of fault and established "irreconcilable differences" causing "irremediable breakdown" of marriage as grounds for dissolution. *See generally* Or Laws 1971, ch 280. As originally enacted, ORS 107.425 authorized a court to order an investigation of the parties to protect the children's future interest, to order a party to testify as a witness in the investigation, and to appoint counsel for the children. Or Laws 1971, ch 280, § 3.

In the early 1980s, the legislature amended ORS 107.425 to mandate appointment of counsel for a child upon the child's request, Or Laws 1981, ch 775, § 5; to authorize a court to take testimony from or confer with a child and to exclude the parents if it "would be likely to be in the best interests of the child," Or Laws 1983, ch 369, § 1; and to authorize a court to appoint counsel for children on the court's or a party's motion, Or Laws 1983, ch 386, § 1. In 1989, the legislature added the provision that is now ORS 107.425(2) as part of SB 389, which also enacted amendments to ORCP 44 promulgated by the Council on Court Procedures adding "a mental examination by a psychologist" to the list of examinations a court may order under that rule. Or Laws 1989, ch 1084. Proponents of the bill testified generally about the purpose and use of "family studies" (also called "custody and visitation studies") in domestic relations litigation:

> "In the area of domestic relations litigation, custody and visitation studies are frequently used to aid the parties and the court in making decisions regarding the selection of the custodial parent and the appropriate terms and conditions of visitation. The study becomes increasingly important if the mental health of either or both of the parties or of the children is in question. Apart from the obvious interest of the court in assessing whether one of the litigants is

mentally ill, custody and visitation litigation is often peppered with allegations of drug and alcohol abuse or physical, sexual or emotional abuse of the children or one of the [parents]. The family study investigation is extremely helpful in providing the litigants and the court with a professional assessment of the family and recommendation to resolve the custody and visitation issues. Cases are often settled after the family study report is known to the parties.

"Family law practitioners customarily stipulate to the utilization of an expert to prepare such evaluations. Many psychologists have developed practices which emphasize family law litigation. The problem occurs if one of the [parents] will not stipulate to the investigation or to the use of a psychologist to conduct the investigation or if the parties are unable to agree as to which party shall bear the expense of the investigation."

Testimony, Senate Committee on Judiciary, SB 389, Apr 18, 1989, Ex U (statement of Oregon Trial Lawyers Association representative Judy Snyder); *see also* Testimony, Senate Committee on Judiciary, SB 389, Apr 18, 1989, Ex T (statement of Oregon Psychological Association representative Lorah Sebastian) ("In difficult and hotly contested custody battles it is important for the judge to have as much standardized and impartial information as possible to make a decision.").

The evolution of ORS 107.425 evinces the legislature's intent to facilitate more robust factfinding relating to the best interests of children involved in custody disputes, born of a recognition that, because children are not parties to an adversarial custody proceeding, their interests may not be fully represented by the parties or their advocates. In an early opinion of this court, we explained that a statutory predecessor to ORS 107.425 "was enacted to afford a measure of protection to the children of the parties, who, otherwise unrepresented under our adversary system, too often are left the unwitting victims of warring parents." *Goode*, 4 Or App at 38 (citing *former* ORS 107.430 (1969), *repealed by* Or Laws 1971, ch 280, § 28). We observed that "it may be hoped that its greater utilization in appropriate cases will result," particularly given a then-recent enactment allowing for a court to grant a divorce decree where both parties were

at fault. *Id.* (citing *former* ORS 107.035 (1969), *repealed by* Or Laws 1971, ch 280, § 28).

      *Goode* involved a divorce suit in which the parties charged each other with cruel and inhuman treatment, *see former* ORS 107.030(6) (1969), *repealed by* Or Laws 1971, ch 280, § 28 (cruel and inhuman treatment as a cause for an injured party to be granted a divorce decree), and the trial court awarded custody of the three-year-old child to the mother. 4 Or App at 35. In reviewing the custody determination, we noted that the trial court there "did not have the advantage of an investigation it had the power on its own motion to order," suggesting that it may have been an appropriate case to order such an investigation because:

> "[t]he vital question here is the impact, both present and projected, upon the normal development of this three-year-old boy of the mother's past conduct, standards and emotional instability.[3] Though not his father's fault, the child has had but little contact with him. Evidence concerning this of necessity is almost exclusively under the control of the parent having the custody of a small child. A competent social or psychological evaluation of child or parents can be of material aid to the court, and in any given case might well prove decisive."[4]

*Goode* thus identified the challenge posed when a child's best interests are determined through an adversarial proceeding to which the child is not a party: relevant evidence pertaining to the child's best interests may be lacking, and a party who wishes to present such evidence may have no practical way to do so due to lack of access to the child or the other party. *See* ORS 107.137(1) (setting forth relevant

---

[3] The court was applying the applicable legal standard under *former* ORS 107.100(1)(a) (1969), *repealed by* Or Laws 1971, ch 280, § 28, which provided in part that "[i]n determining custody the court shall consider the best interests of the child and the past conduct and demonstrated moral standards of each of the parties."

[4] We twice reaffirmed our observation in *Goode* of the "advantage" of an independent investigation to a court in aid of its decision-making. *See Mrozek v. Mrozek*, 13 Or App 362, 363, 509 P2d 55 (1973) ("In making its [custody] award the trial court had the advantage of a study made pursuant to ORS 107.425(1)."); *Gasser and Gasser,* 16 Or App 675, 676, 519 P2d 1290 (1974) ("While we adhere to our comments in *Goode*[ ] concerning its utilization as an aid to the court in appropriate cases, it is clear that on this record that there was no abuse of discretion in not ordering the study authorized under that section, particularly in view of the fact that neither party requested the court to order one.").

factors a court must consider in determining the best inter-
ests and welfare of the child); ORS 107.137(4) ("In determin-
ing custody of a minor child under ORS 107.105 or 107.135,
the court shall consider the conduct, marital status, income,
social environment or lifestyle of either party only if it is
shown that any of these factors are causing or may cause
emotional or physical damage to the child.").

There may be additional case-specific factors at
play in a given case, as well as relevant institutional and
systemic factors that a court may consider in its exercise of
discretion. *See Mott*, 370 Or at 844 (explaining that a court's
exercise of discretion may consider a variety of factors that
implicate case-specific, institutional, and systemic inter-
ests). But, consistent with the statutory framework gov-
erning child custody, the court's primary consideration in
exercising discretion under ORS 107.425(2) must be how the
relevant factors implicate the child's best interests.

With that understanding of a court's discretion
under ORS 107.425(2) in mind, we turn to father's argu-
ments and the trial court's express reasoning for denying
father's motion to appoint a custody evaluator. *See Mott*, 370
Or at 849 (considering the court's express rationale in deter-
mining whether it abused its discretion); *cf. A. D. L. and
Lane*, 325 Or App 355, 361, 529 P3d 294 (2023) ("To properly
exercise discretion, a court must inquire into the nature of
and reasons for a party's continuance request and evalu-
ate its merits."). Father argues that "[t]he purpose of ORS
107.425 is to promote further investigation of high conflict
families in order to protect the welfare and promote the best
interests of children" and that his request for a custody eval-
uation "was presented at a time where there was evidence of
substantial dysfunction and potential harm to the child." In
father's view, the trial court failed to explain its reasoning
for denying the motion, aside from mother's opposition and a
lack of "good cause" to grant it, and that, in any event, "[n]o
good cause existed to deny the motion in light of [m]other's
disturbing behavior directly impacting [f]ather's relation-
ship with the child, [f]ather's offer to pay the entire cost in
advance, and [his] offer of logistical solutions to the parties'
geographical distance."

"When reviewing a trial court's decision for abuse of discretion, the record must supply enough information to allow appellate courts to engage in a meaningful review of the trial court's exercise of discretion." *State v. Stull*, 281 Or App 662, 668, 386 P3d 122 (2016), *rev den*, 360 Or 752 (2017). Although the court's explanation "need not be lengthy or complex, * * * it must comport with the applicable legal framework and describe the basic reasons for the court's decision." *Id.* (internal quotation marks and citation omitted).

Here, the trial court's brief explanation for denying father's motion to appoint a custody evaluator immediately followed the court's colloquy with father's counsel and its stated reasons for granting father's motion to order a psychological evaluation of mother. During that colloquy, the trial court identified the grounds on which it would exercise its discretion on all three motions: in its view, because court-ordered evaluations 1) are not typically ordered in modification proceedings, and 2) are "entirely discretionary," father needed to show that 3) the evaluation would be "worth the delay and the expense" in that it would add relevant information that could not otherwise be generated in an adversarial hearing. Ruling on the motions, the court found that the circumstances of the case "likely do raise issues of fact * * * that might require expert testimony outside what we typically would hear from lay witnesses or simple fact witnesses that would be necessary to inform the court's decision on the motion to modify." The court then explained that "the central issue, if there could be one defining issue in the case, quite frankly, is the mental state or the psychological state of [mother]," which was also apparent to the court from the prior enforcement proceeding. For those reasons, and because mother did not oppose the motion, the trial court found "good cause" to grant the motion to order a psychological evaluation of mother. By contrast, the trial court ruled that it did not find "sufficient good cause" to exercise its discretion to grant the other two motions.

We agree with father that under the circumstances of this case, the court abused its discretion when it denied father's motion to appoint a custody evaluator. We first observe that, absent a relevant supplemental local rule,

whether it is the typical practice of a jurisdiction to exercise discretion in certain cases is not relevant to the substantive legal standard under the applicable statute. And, as discussed above, a court's authority to grant relief under ORS 107.425 is not *entirely* discretionary; it must be exercised within the bounds of the governing statutory framework. Accordingly, it appears that the trial court may have exercised its discretion based on two incorrect legal premises, which itself constitutes an abuse of discretion. *Brush and Brush*, 319 Or App 1, 7-8, 509 P3d 124 (2022).

On the merits, the trial court acknowledged that the circumstances of this case likely raised issues of fact that required expert testimony to inform the court's decision on the motion before it and explained that, in its view, the "central issue" in the case is mother's psychological state. In granting father's unopposed motion for a psychological evaluation of mother based on "good cause," the court implicitly concluded that such an evaluation would be "worth the delay and the expense" because it would add relevant information that could not otherwise be generated in an adversarial hearing. However, as to the other two motions, the court simply stated that there was not "sufficient good cause" to grant them. In context, we understand the court to have denied the motion on the grounds that 1) the custody evaluation would not be worth the delay and expense because it would not add relevant information that could not otherwise be generated in an adversarial hearing, and 2) mother opposed the custody evaluation.

The first reason is unsound on this record. Given that the court ordered a psychological evaluation of mother, it is unclear how ordering an additional evaluation would cause further delay, and father had proposed to cover the upfront cost of the evaluation. Further, the court's implicit finding that a custody evaluation would not add relevant information that could not otherwise be generated in an adversarial hearing is not supported by the record, particularly in light of the court's finding that mother's psychological state is a "crucial" issue. Mother's psychological state may provide additional insight into mother's conduct, but that conduct is relevant only insofar as it is "causing or

may cause emotional or physical damage to the child." ORS 107.137(4). And because mother was the primary residential parent, father did not have meaningful access to evidence of the impact of mother's psychological state and attendant conduct on A. The geographical distance between mother and father, the court's previous finding in the enforcement hearing that mother had substantially interfered with father's parenting time and had acted objectively unreasonably during the litigation, and the fact that mother was unrepresented by counsel further compounded that divide. We do not mean to suggest that such a gap warrants a custody evaluation in every case, as there may be countervailing case-specific, systemic, and institutional factors that weigh against it. But the court's implicit finding here that such an evaluation would not provide additional relevant evidence that the parties could not otherwise present was contrary to the record before it and to reason. *State v. Sewell*, 257 Or App 462, 469, 307 P3d 464, *rev den*, 354 Or 389 (2013) ("An abuse of discretion occurs when a court exercises its discretion to an end not justified by, and clearly against, evidence and reason." (Internal quotation marks and citation omitted.)).

Which leaves the second reason: mother's opposition. A court may consider reasoned opposition in exercising its discretion. *Mott*, 370 Or at 844. Here, mother initially opposed the custody evaluation "due to COVID-19." However, when the trial court asked mother to respond to father's arguments on the motions, she responded that she was "okay with it" and only objected to father's proposed evaluator and to her medical information being disclosed. None of those objections justified denying the motion outright, given that they pertained to how a custody evaluation would be executed, not to the evaluation itself.

Having concluded that the trial court erred, we next consider whether the error was prejudicial. Father argues that the error was not harmless because "[t]he testimony at trial demonstrated, and the trial court acknowledged, that [m]other's conduct was harming the child and that there is a possibility of future harm by [m]other," and, in its ultimate ruling, the trial court acknowledged that this was an extraordinarily close case but explained that it needed more compelling evidence to find that mother is unfit.

We readily conclude that the error was not harmless. At the hearing on the motion to modify, the trial court explained that this was "an extraordinarily close case," found "a lot of [m]other's behavior very disturbing, very troubling" and "her credibility *** sorely lacking in some key[] areas in this case" to the point that "it almost, almost led this court finding her to be an unfit parent." But the court concluded that it was not convinced that it was in A's best interest to relocate to Pennsylvania, given that the expert who evaluated mother had no opinion on mother's overall fitness as a parent and that there was no expert testimony regarding the risk to A of relocating. It is apparent to us that the issues that father sought to address with a custody evaluation were precisely the issues that the trial court considered most significant when deciding whether it was in A's best interest to modify the custody and parenting time judgment. *Dept. of Human Services v. N. J. V./D. L. O.*, 290 Or App 646, 653-54, 419 P3d 783 (2018) (concluding that the denial of a continuance motion was prejudicial where "the issues mother sought to address with an updated assessment were precisely the issues that the juvenile considered most significant when deciding" a guardianship).

Because the legal issue will likely arise on remand, we turn to father's second assignment of error in which he contends that the trial court legally erred in applying ORS 107.137 in its custody determination. That statute provides, in relevant part:

"(1) *** [I]n determining custody of a minor child under *** 107.135, the court shall give primary consideration to the best interests and welfare of the child. In determining the best interests and welfare of the child, the court shall consider the following relevant factors:

"(a) The emotional ties between the child and other family members;

"(b) The interest of the parties in and attitude toward the child;

"(c) The desirability of continuing an existing relationship;

"(d) The abuse of one parent by the other;

"(e)   The preference for the primary caregiver of the child, if the caregiver is deemed fit by the court; and

"(f)   The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child ***.

"(2)   The best interests and welfare of the child in a custody matter shall not be determined by isolating any one of the relevant factors referred to in subsection (1) of this section, or any other relevant factor, and relying on it to the exclusion of other factors."

ORS 107.137. "Under ORS 107.137, whether the trial court applied the correct legal standard in making the challenged best interests determination presents a question of law that we review for legal error." *Murray and Murray*, 287 Or App 809, 814, 403 P3d 473 (2017) (internal quotations and citation omitted).

Father argues that the trial court misconstrued ORS 107.137(1)(e) by "determining that it would need to find [m]other unfit in order for the other factors under ORS 107.137(1) to overcome the primary caregiver preference," thereby "impermissibly isolating the primary caregiver preference and treating the factor as dispositive." In father's view, the trial court incorrectly construed ORS 107.137(1)(e) "to mean that the preference for the primary caregiver unconditionally prevails over the other factors if the court cannot find the primary caregiver unfit."

We agree with father that it would be legal error for the court to find that mother was the primary caregiver of A and to isolate and rely on that factor to the exclusion of other factors that it found in favor of father. *See Murray*, 287 Or App at 816 (so stating); *Gomez and Gomez*, 261 Or App 636, 637-38, 323 P3d 537 (2014) (explaining that the primary caregiver is afforded a statutory preference, but that factor "is not dispositive"). However, we are satisfied that the trial court did not impermissibly isolate that factor in its custody determination. To be sure, in remarks made during the parties' closing arguments, the court explained that, because the other factors equally favored both parties, its decision turned on balancing factors (1)(e) and (1)(f), that factor (1)(f) "weighs overwhelmingly in favor of

[f]ather," and that "the only way" that it could conclude that factor (1)(f) "trump[s] the preference for [m]other as primary caregiver" would be to conclude that the evidence as to factor (1)(f) "is so overwhelming that it makes [m]other overall unfit as a parent." Out of context, that statement suggests that the court was construing factor (1)(e) to prevail over the other factors as a matter of law unless the court found mother to be an unfit parent overall. However, the court also explained that it was considering all of the factors and that the primary caregiver preference was particularly significant in this case because "[o]ut of 2196 nights that this child has been alive, 2076 have been with" mother. Indeed, when the court announced its custody ruling from the bench the following day of trial, it considered all the statutory factors on the record and made clear that it was not isolating and relying on the primary caregiver preference to the exclusion of others, but rather that the primary caregiver preference weighed more heavily in favor of granting custody to mother under the circumstances of this case:

> "[THE COURT:] So even though [factor (1)(f)] weighs overwhelmingly in favor of Father, that factor, plus the absence of any additional compelling evidence that Mother is unfit, leads me to conclude that the statutory preference for the primary caregiver in this case *tips the scales* on custody in Mother's favor, because I cannot find Mother is unfit.
>
> "* * * * *
>
> "But this court based on all of the evidence that I have heard, number one, cannot get to the point of saying Mother is so unfit that the risks of her admitted lack of capacity in one functional parenting domain *outweighs* the risks of relocating, and for those reasons, custody stays with Mother.
>
> "* * * * *
>
> "[B]ased on a review of the case law, review of the statute, and weighing of the evidence, lack of expert testimony, and the equivocation on the fitness issue by the one expert who did appear, I just do not believe that it would be in the best interests of this child to uproot her, as I said, and take her out of everything she's known for six years and put her in a brand-new environment starting first grade.

That's too, that's a bridge too far, a hill too high, however you want to put it. But I just am not convinced that it is in the child's best interests to do that."

We therefore reject father's contention that the trial court applied an incorrect legal standard in its custody determination. However, given our disposition of father's first assignment of error, the court's custody determination on remand will likely be based on a very different record.

Reversed and remanded.